[No. 716.     August 23, 1898.]

## HENRY LOCKHART, Plaintiff in Error, v. J. Q. WILLS et al., Defendants in Error.

### SYLLABUS BY THE COURT.

MINING LANDS—SPANISH GRANT—LOCATION OF MINE—FORFEITURE—EJECTMENT —HARMLESS ERROR.—1. Lands embraced within the boundaries of a Mexican or Spanish grant in New Mexico in 1893, as claimed and which was *sub judice* in the court of private land claims, were open to exploration and purchase under the mining laws of the United States.

2.  (a) As against a subsequent locator, a location, not perfected according to the territorial laws, within the time provided becomes forfeited and void, and the ground embraced therein becomes open to location.

   (b) Plaintiff, to maintain ejectment against a subsequent locator, must show a valid location.

   (c) When the facts produced by plaintiff show a forfeiture of his location has taken place, it is the duty of the court to instruct the jury to find for the defendants.

3.  Where facts show that a forfeiture of plaintiff's location has taken place, for failure to perform the statutory requirements for a valid location, it is immaterial to show that such failure was a result of a conspiracy to defraud plaintiff on the part of plaintiff's co-locator with other persons who locate after forfeiture.

4.  (a) The assigning of a wrong reason for an act by the trial court is not reversible error if the act done was in law right.

   (b) When the plaintiff's case is inherently and fatally defective and is incurable, the defendant is entitled to have the judgment affirmed, notwithstanding error of the trial court.

5.  (a) When plaintiff allows his location to become forfeited by failure to perfect same, as required by law, he can not set up as an excuse for failure that prior to the expiration of the time allowed by law to perfect his location, others took adverse possession of his claim, of which he was not aware until after forfeiture.

   (b) In order for adverse possession and ouster to furnish an excuse for not perfecting the location of a mining claim, the party offering such excuse must have in some way been prevented thereby from perfecting his location. Lockhart v. Wills et al., 50 Pac. 318, overruled.

*Error*, from a judgment for defendant, to the Second Judicial District Court, Bernalillo County. Affirmed, overruling Lockhart v. Wills et al., page 263, ante.

The facts are stated in the opinion of the court.

WARREN, FERGUSSON & GILLETT for plaintiff in error.

The prior discovery and possession by Pilkey of the "Sampson Mine" was sufficient possession and title on the part of plaintiff to sustain ejectment against defendants as intruders, having no better title. Comp. Laws 1884, secs. 1570, 2218, 2258, 2263; Deemer v. Falkenburg, 4 N. M. 149; New Mexico, etc., v. Crouch, Id. 293; Anderson v. Gray, 25 N. E. Rep. 843; Christy v. Scott, 14 How. 282; Coryell v. Cain, 16 Cal. 567; Sears v. Taylor, Id. 318; Wilson v. Fine, 38 Fed. Rep. 792; Gonder v. Miller, 27 Pac. Rep. 333.

The possession of one tenant in common is the possession of all, and the law assumes and requires that each shall be true to the other. Day v. Howard, 73 N. C. 1; Campbell v. Campbell, 13 N. H. 483; Kinney v. Slattery, 51 Ia. 353; Miller v. Myers, 46 Cal. 535; Mining Co. v. Taylor, 100 U. S. 37.

Putting of Fagly in possession and denial by Pilkey of plaintiff's rights, before expiration of the three months after the first location, constituted an actual ouster of plaintiff. Sedg. & Wait, Tr. Tit. 163, sec. 277; Barnitz v. Casey, 7 Cranch. 456. See, also, Sabanigo v. Maverick, 124 U. S. 261; Haws v. Mining Co., 160 Id. 303; Burt v. Panjaud, 100 Id. 180; English v. Johnson, 12 Morr. M. Rep. 202. See, also, Bird v. Gisbros, 70 Am. Dec. 617; Plume v. Seward, 60 Id. 601; Weimer v. Lowry, 11 Cal. 104; Bequette v. Canefield, 4 Id. 278.

Continuous possessio pedis does not apply to mines as to agricultural lands. Atwood v. Fricott, 17 Cal. 37; English v. Johnson, Id. 107; Blanch. & Wks. on Mines, 172, 107; Morton v. Solambo, 26 Cal. 527.

CHILDERS & DOBSON for defendants in error.

An appellate court will not reverse a case and remand it for errors committed on a former trial, if it is certain a new trial must result in the same verdict as was rendered on the former trial. Wisner v. Brown, 122 U. S. 214, 220; Evans v. Pike, 118 Id. 250; Barth v. Clise, 12 Wall. 403.

The ground in controversy was open to location at the time the location notices under which the respective parties claim were posted. 1 Supp. Rev. Stat. U. S. [2 Ed.] 923, sec. 15; Stoddard v. Chambers, 2 How. 285, 318; Wolsey v. Chapman, 101 U. S. 755, 769; Newhall v. Sanger, 92 Id. 761; Van Ravnegan v. Bolton, 95 U. S. 33; Hosmer v. Wallace, 97 Id. 575; Trenouth v. San Francisco, 100 Id. 251; Aurecoechea v. Bangs, 114 Id. 381; Doolan v. Carr, 125 Id. 618; U.S. v. McLaughlin, 127 Id. 428; Carr v. Quigley, 149 Id. 652.

Until the grant is confirmed, the grant owner has no right whatever; he can not maintain ejectment or any other kind of suit against occupants. Pinkerton v. Ledoux, 129 U. S. 346; Botiller v. Dominguez, 130 Id. 238; Astiazaran v. Land & Min. Co., 148 Id. 80.

Plaintiff in error not having recorded his location notice within the time required by law forfeited all rights accquired under his location. Belk v. Meagher, 104 U. S. 287; Comp. Law, sec. 1566; acts 1889, chap. 25, secs. 1, 2; Faxon v. Barnard, 4 Fed. Rep. 703; Mallett v. Uncle Sam Min. Co., 1 Nev. 188; Kendall v. Mining Co., 144 U. S. 663; Wills v. Blaine, 6 N. M. 238; Seidler v. La Fave, Id. 44; Mining Co. v. Patterson, 3 Id. 269.

PARKER, J.—This is an action of ejectment brought by the plaintiff in error against the defendants in error, in the district court of the Second judicial district, sitting in and for Bernalillo county, for the recovery of the possession of a piece or parcel of mining ground called by the plaintiff in error the Sampson Mining Claim, situated in the Cochiti mining district in said county.

At the close of the trial the court instructed the jury to find a verdict in favor of the defendant and entered judgment accordingly. To review the action of the court below, plaintiff prosecutes this writ of error.

It was stipulated by the parties that the premises in controversy are situated within the limits of the Canada de Cochiti grant, as claimed and as surveyed and approved by the surveyor general of New Mexico on June 29, 1885; that the grant was never confirmed by congress on said report; that petitions were filed for the confirmation of the grant in the court of private land claims by one set of claimants on March 2, 1893, and by another set of claimants on March 3, 1893; that said grant was confirmed by decree of said court September 29, 1894; that the premises in controversy are not included within the boundaries of the grant as confirmed by said decree; and that appeal from said decree was taken to the supreme court of the United States and was pending and undetermined at time of the trial.

It is claimed by counsel for plaintiff that the premises in controversy being located within the boundaries of a claimed Mexican or Spanish grant, and which was at the time sub judice in the court of private land claims of the United States, the same was withdrawn or reserved from the public domain and were not "lands belonging to the United States," open to exploration for mining purposes, within the meaning of section 2319 of the Revised Statutes of the United States. It is further claimed that as a consequence of the foregoing proposition, the rights of the parties in this case are not to be determined by the ordinary rules governing the right to the possession of mining claims upon lands belonging to the United States, as established by the federal and territorial legislation, but they must be ascertained by the rules of law applicable to contests for the possession of land where neither party has title or right to title, and where each must depend upon the priority, extent and continuity of actual possession.

The first of the foregoing contentions is controverted by counsel for defendants, and it is insisted that the premises in

controversy although within the boundaries of the Canada de Cochiti grant, as claimed, are "lands belonging to the United States" within the meaning of section 2319 of the Revised Statutes of the United States, and subject to appropriation under the mining laws. It is important, therefore, to ascertain the status of these lands at the time of the entry of the parties thereon.

The lands in controversy are within the territory ceded to the United States by Mexico by the treaty of Guadalupe Hidalgo in 1848. Article 8, of that treaty (9 Stat. 922) provides that Mexicans established in the ceded territory, shall be free to remain or to remove at any time, retaining the property they possess in the ceded territory or disposing of the same and removing the proceeds thereof and further, that property of every kind belonging to Mexicans not established in the ceded territory shall be inviolably respected, the same as if the property belonged to citizens of the United States. This section of this treaty came directly under the consideration of the supreme court of the United States, in the case of Botiller v. Dominguez, 130 U. S. 238. The case arose on the question as to whether a grant, perfect at the time of the treaty of Guadalupe Hidalgo, needed to be presented to the board of commissioners of California under the act of March 3, 1851, under penalty of forfeiture. The court say: "By the treaty of peace known as that of Guadalupe Hidalgo, of Feb. 2, 1848, 9 Stat. 922, which closed the controversy and the war between the United States and Mexico, a cession was made of a very large territory by the government of Mexico to the government of the United States. This was a transfer of the political dominion and of the proprietary interest in this land, but the government of Mexico caused to be inserted in the instrument certain provisions intended for the protection of private property owned by Mexicans within this territory at the time the treaty was made; and it may be conceded that the obligation of the United States to give such protection, both by this treaty and by the law of nations was

*Margin note:* MINING lands: Spanish grant.

perfect. * *. * " "Two propositions under this statute" (The act of March 3, 1851, requiring claimants of Mexicans or Spanish grants in the state of California to present the same to the board of commissioners within a certain time under penalty of forfeiture) "are presented by counsel in support of the decision of the supreme court of California. The first of these is, that the statute itself is invalid, as being in conflict with the provisions of the treaty with Mexico, and violating the protection which was guaranteed by it to the property of Mexican citizens, owned by them at the date of the treaty; also in conflict with the rights of property under the constitution and laws of the United States, so far as it may affect titles perfected under Mexico. * * * With regard to the first of these propositions, it may be said that so far as the act of congress is in conflict with the treaty with Mexico, that is a matter in which the court is bound to follow the statutory enactments of its own government. If the treaty was violated by this general statute enacted for the purpose of ascertaining the validity of claims derived from the Mexican government, it was a matter of international concern, which the two states must determine by treaty, or by such other means as enables one state to enforce upon the other the obligations of a treaty. This court, in a class of cases like the present, has no power to set itself up as the instrumentality for enforcing the provisions of a treaty with a foreign nation which the government of the United States, as sovereign power, chooses to disregard." We understand this case to mean that the treaty of Guadalupe Hidalgo established the duty upon the government of the United States to protect Mexican citizens in all of their rights of property which they possessed at the date of the treaty, but that we must look to the legislation of congress alone to ascertain what has been done in this regard, and that the treaty itself placed no restrictions whatever upon the disposition of any of these lands which the courts are bound to recognize. The same principle is recognized in Pinkerton v. LeDoux, 129 U. S. 346, and Aztiazaran v. Santa Rita Land & Mining Co., 148 U. S. 80. The lands included in the grant in question as

claimed, and as surveyed by the surveyor general of New Mexico, were reserved from sale or other disposal by section 8 of the act creating the offices of surveyor general of New Mexico, Kansas and Nebraska, passed July 22, 1854 (10 Stat. 308). The section provides that the surveyor general should ascertain the origin, nature, character and extent of all claims of land under the laws, usages and customs of Spain, and make report thereon, which was to be laid before congress for such action thereon as might be deemed just and proper, with a view to confirm bona fide grants and give full effect to the treaty of 1848 (Guadalupe Hidalgo). And the section further provides: "And until the final action of congress upon such claims, all lands covered shall be reserved from sale or other disposal by the government." Under this statute, the surveyor general of New Mexico caused the land in question to be surveyed and on June 29, 1885, approved the survey. But congress never acted on the report nor confirmed the grant.

By the act of March 3, 1891 (First Supplement, Rev. Stat. U. S., p. 917), congress provided an entirely new method of ascertaining the rights of claimants to Spanish or Mexican land grants. It creates the court of private land claims, mentioned above in the stipulation of the parties, and confers upon it the jurisdiction to hear and determine the rights of claimants on petition, in all cases where the claims have not been confirmed by congress or otherwise fully decided upon by lawful authority. The act further provides that the decree of the court of private land claims shall be final as to the rights of claimants, unless appeal be taken to the supreme court of the United States, in which case the decree of the latter court becomes a final adjudication of the rights of both claimant and the United States. It will, therefore, be seen that congress elected to abandon its control over the adjudication and settlement of these land titles and to delegate the same to a new tribunal clothed with full and complete powers in the premises. No reservation of the land within any claimed grant is contained in the act, but, on the other hand, section 15 of the act expressly repeals section 8 of the act of July 22,

1854, as follows:    "That section eight of the act of congress approved July twenty-second, eighteen hundred and fifty-four, entitled 'An act to establish the offices of surveyor general of New Mexico, Kansas and Nebraska, to grant donations to actual settlers therein, and for other purposes,' and all acts amendatory or in extension thereof, or supplementary thereto, and all acts or parts of acts inconsistent with the provisions of this act are hereby repealed."    Section 14 of the act provides that the proceedings before the court of private land claims, if it shall appear that the land, or any part thereof, decreed to any claimant, under the provisions of the act, shall have been sold or granted by the United States to any other person, such title from the United States shall remain valid and such court shall render judgment in favor of such grant claimant for the reasonable value of said lands so sold or granted.

It will thus be seen from these acts of congress that it has first established a reservation of the lands embraced within the boundaries of a claimed grant upon the report of the surveyor general, and that thereafter it has elected to repeal the reservation and the section of the act authorizing it, and to provide for compensating any grant claimant for any lands which the government may have elected to sell and dispose of within the boundaries of his grant.    It seems clear to us, therefore, that there is no statutory reservation of any of the lands embraced within the boundaries of a claimed grant in New Mexico.

But it is urged by plaintiff that these lands have been held by the land department of the United States to be reserved, and that such construction is binding upon this court. We refer to a decision of Secretary Francis reported in 24 Decisions of the Interior Department, p. 1, in which he holds that by the terms of treaties between the United States and Mexico lands embraced within Mexican or Spanish grants, were placed in a state of reservation, and by the act of March 3, 1891, the reservation is continued in force.    We are also referred to certain decisions of the commissioner of the general land office, contained in letters of instruction to the

surveyor general of New Mexico.    In each of these decisions
the secretary and the commissioner have sought to determine
as a matter of law the status of lands embraced within a claimed
Mexican grant.    While it is true that a finding of fact made
by an officer of the land department of the government, in a
matter with which that department is charged by law, is bind-
ing upon the court, it has frequently been held that where the
land department of the government attempts to construe a
law, their construction is not binding upon the courts.    Wis-
consin Central R. R. Co. v. Forsythe, 159 U. S. 46.

It is further to be remarked that the right to the posses-
sion of a mining claim is never a matter for the determination
of the land department of the government.    The location and
possession of a mining claim is determined by the federal and
local legislation, and not until the locator seeks to obtain a
patent for his mining claim does he come in contact with the
land department.    And even then, if his right to the posses-
sion of the claim be contested, the whole matter is referred by
the land department to the court for determination.    We do
not agree to the construction put upon the treaty of Guada-
lupe Hidalgo, by the land department of the government, nor
do we think that construction is borne out by the supreme
court of the United States, in the cases cited above.    Neither
any actual reservation of these lands by the land department
nor any statutory authority for making such reservation has
been called to our attention, and we assume that none exist.

There being no reservation of these lands within claimed
grants in New Mexico by treaty, law or authorized act of the
executive department of the government (Wolsey v. Chap-
man, 101 U. S. 755), we conclude that they are not reserved
lands and are "lands belonging to the United States" within
the meaning of section 2319 of the Revised Statutes of the
United States.

These conclusions are borne out by a case which arose
under the legislation of congress to settle the French and
Spanish claims in the territory of Louisiana.    On February
15, 1811, congress passed an act authorizing the president to

offer for sale all lands which had been surveyed in the territory, but made the following reservation: "Provided, however, that till after the decision of congress thereon, no tract shall be offered for sale, the claim to which has been in due time and according to law" (under former acts of congress for ascertaining and adjusting titles and claims to lands within the territory of Orleans and the district of Louisiana and also in Missouri) "presented to the recorder of and titles in the district of Louisiana and filed in his office for the purpose of being investigated by the commissioners appointed for ascertaining the rights of persons claiming lands in the territory of Louisiana." This reservation was continued in force up to May 26, 1829, when it ceased until it was revised by the act of July 9, 1832. A New Madrid location has been made by the defendant, while this reservation was in force, upon a tract claimed and filed under the act of 1811 and supplementary acts thereto. In passing upon the effect of the reservation and the attempted entry under the New Madrid certificate, the court said: "His location was made on lands not liable to be thus appropriated, but expressly reserved; and this was the case when his patent was issued. Had entry been made or the patent issued, after the twenty-sixth of May, 1829, when the reservation ceased, and before it was revived by the act of 1832, the title of the defendant could not be contested." Stoddard et al. v. Chamber, 2 Howard, 285-318.

Numerous cases arise in California concerning the status of lands embraced within claimed grants in that state, but it will be seen that they were all determined upon the acts of congress peculiar to California and different from the present state of congressional legislation. By the act of March 3, 1851 (9 Stat. 631), congress provided a commission to ascertain and settle the private land claims in the state of California. Section 13 of the act provides "That all lands, the claims to which have been finally rejected by the commissioners in manner herein provided, or which shall be finally decided to be invalid by the district or supreme court, and all claims, the claims to which shall not have been presented to said com-

missioners within two years after the date of this act, shall be deemed, held and considered as part of the public domain of the United States." The act of July 1, 1862 (12 Stat. 489), granted to certain railroad companies certain alternate sections of land on each side of their road, "not sold, reserved or otherwise disposed by the United States, and to which a pre-emption or homestead claim may not have attached at the time the line of said road is definitely fixed." This grant afterwards enlarged (13 Stat. 358), and continued the reservation from the grant by providing the grant "shall not defeat or impair any pre-emption, homestead, swamp land, or other lawful claim, nor include any government reservation or mineral lands, or the improvements of any bona fide settler." The grant to the railroad company took effect January 31, 1865, and the patent issued in 1870. Under the act of 1851, a claim for the Moquelamos Mexican or Spanish grant was duly filed with the commissioners and was finally rejected by the supreme court of the United States on February 13, 1865. The land embraced therein thus became a part of the public land of the United States. The public land system was extended to California by the act of March 3, 1853 (10 Stat. 246), and after the rejection of the Moquelamos grant, entry was made of a portion of the land formerly claimed thereunder, and patent issued subsequent to the patent to the railroad company. The grantee of the railroad company brought suit against the grantee of the past patentee to determine the ownership of a quarter section of land covered by both patents, and the supreme court of the United States, in Newhall v. Sanger, 92 U. S. 761, held that by reason of the statutory reservation contained in the acts mentioned above, the railroad company did not take the land in controversy under its patent of 1870, and that the entry-man, under the general laws after the reservation of the act of 1851 ceased, took the land under his subsequent patent. Reference is made in the opinion to the fact that the Mexican grant was sub judice at the time the grant to the railroad company took effect, but we do not understand the court to put its decision on this ground, but upon

the express statutory reservation. Numerous other cases aris-
ing in California have been decided by the same court upon
the same principle or in which the same principle was recog-
nized. (See Van Reynegan v. Bolton, 95 U. S. 33; Hosmer
v. Wallace, 97 U. S. 575; Teenouth v. San Francisco, 100
U. S. 251; Aurrecoechea v. Bangs, 114 U. S. 381; Doolan v.
Carr, 125 U. S. 618; U. S. v. McLaughlin, 127 U. S. 428;
Carr v. Quigley, 149 U. S. 652.) Some of the principles in-
volved in the case under consideration have been discussed
and a like conclusion reached by this court in Grant v. Jara-
millo, 6 N. M. 313, and Chavez v. Chavez de Sanchez, 7
N. M. 58. .

(2) Under the foregoing conclusion, this case must be
determined upon the principles applicable to the ordinary con-
tests for the possession of mining claims upon
LOCATION of       the public domain. The pertinent provisions
mine: ejectment.   of the laws of New Mexico, in force at the time
of the entry upon the lands in controversy by
the parties are as follows: Section 2286 of the Compiled
Laws of 1897, is as follows:

"Sec. 2286. Any person or persons desiring to lo-
cate a mining claim upon a vein or lode of quartz or
other rock in place bearing gold, silver, cinnabar, lead,
tin, copper or other valuable deposit, must distinctly
make the location on the ground so that its boundaries
may be readily traced, and post in some conspicuous
place on such location a notice in writing stating thereon
the name or names of the locator or locators, his or their
intention to locate the mining claim, giving a descrip-
tion thereof by reference to some natural object or per-
manent monument as will identify the claims; and also
within three months after posting such notice, cause to
be recorded a copy thereof in the office of the recorder
of the county in which the notice is posted. And, pro-
vided, no other record of such notice shall be neces-
sary."

Sections 1 and 2 of chapter 25 of the Laws of 1889 are as follows:

"Section 1.          That the locator or locators of any mining claim, located after this act shall take effect, within ninety days from the date of taking possession of the same, sink a discovery shaft upon such claim to a depth of at least ten feet from the lowest part of the rim of such shaft at the surface, exposing mineral in place, or shall drive a tunnel, adit or open cut upon such claim to at least ten feet below the surface, exposing mineral in place."

"Section 2.          The surface boundaries of all mining claims hereafter located, shall be marked by four substantial posts or four substantial monuments of stone set at each corner of such claim.          Such posts or monuments of stone shall each be plainly marked so as to indicate the direction of such claim from each monument of stone or post."

t will be seen that the laws require that the locator of a mine post his location notice, mark his surface boundaries with four substantial posts or monuments, properly marked, and within ninety days after taking possession, sink a shaft upon such claim at least ten feet deep from the lowest part of the rim at the surface, exposing mineral in place or drive a tunnel, adit or open cut at least ten feet below the surface, exposing mineral in place, and also within three months after posting such notice, cause to be recorded a copy thereof in the office of the recorder of the county, in which the notice is posted. The testimony offered in behalf of the plaintiff shows that he and his co-locators posted a location notice on the ground in controversy on July 10, 1893, calling it the Sampson mining claim, and that the same was not filed for record until December 9, 1893.          The record discloses an entire absence of proof of a compliance with any of the other essential elements of a valid location save a discovery of mineral.          Plaintiff introduced an amended location notice of the locators under which defendants claim, dated December 16, 1893, which was duly

recorded December 30, 1893. and which recites that it is an amended location of the Washington mining claim, the original whereof was made October 23, 1893. No evidence was offered to show that the locators of the Washington mine exercised dominion over the premises as locators prior to October 23, 1893, and in fact proof was offered, but which was excluded on other grounds, which tended to show affirmatively that they did not appropriate the ground prior to that time. This suit was instituted on June 21, 1895, and nothing was done or attempted to be done to perfect the Sampson location between July 10, 1893, the date of location, and June 21, 1895, the date of commencing action, except as above recited. There is no evidence in the record to show that the entry of defendants was otherwise than peaceably. Under this state of facts, and other facts to be hereafter discussed, the court directed a verdict for the defendant, and we think he committed no error. It is not to be questioned in this or any other court that a compliance with the federal and territorial statutes is necessary to perfect and preserve one's rights to the possession of a mining claim. "The right to possession comes only from a valid location; consequently if there is not location, there can be no possession under it. Location does not necessarily follow from possession, but possession from location. A location is not made from taking possession alone, but by working on the ground, recording and doing whatever else is required for that purpose by the act of congress and the local laws and regulations." Belk v. Meagher, 104 U. S. 284.

And a compliance with the local laws in regard to the acts required by them to be done to make a valid location was necessary on the part of the plaintiff and his co-locators under penalty of forefeiture. Faxon v. Barnard, 4 Fed. Rep. 702; Mallett v. The Uncle Sam Mining Co., 1 Nev. 188.

When the time expired within which those acts of location were to be performed under the statute, the land embraced within plaintiffs location became open and subject to location and appropriation by any qualified person. Plaintiff's rights had become forfeited and extinguished at least as against a

subsequent locator coming in before the defects in plaintiff's location had been cured. It was necessary for the plaintiff before he could maintain ejectment to show a valid location. Wills v. Blaine, 5 N. M. 238.

The facts showing that a forfeiture had taken place at the time of the location of the Washington mine, it was the duty of the court to take the case from the jury. Fairbanks v. Woodhouse et al., 6 Cal. 434.

(3)  The plaintiff offered evidence tending to show that the plaintiff and one Johnson entered into a contract with one Pilkey, such as is commonly called a grub-stake contract, and thereunder Pilkey located the premises as the Sampson Mine, in the names of the three parties; that before the expiration of the ninety days after location within which the same might be perfected, Pilkey entered into a conspiracy with some of the defendants to locate the ground and to defraud plaintiff and Johnson of their rights; that in pursuance of such conspiracy the locators of the Washington mine visited the premises before the expiration of the ninety days, took samples therefrom for assay, and looked the ground over and remained in the vicinity until the claim became forfeited and afterwards located it; that Pilkey had an equitable interest in the new location. Some of this evidence was admitted, and some excluded, but we think it should have been excluded as immaterial. When the Sampson location became forfeited the land claimed thereunder became public domain and open to location. It was the same as if it never had been made as against a subsequent locator. No matter how firmly Pilkey was bound in law or in morals to perfect the location of the Sampson, the fact remains that he did not do so, and the claim consequently became forfeited. Saunders et al. v. Mackey, 6 Pac. Rep. 361. And the fact of his conspiracy with others, if true, is entirely immaterial. Doherty v. Morris, 16 Pac. Rep. 911. We do not wish to be understood as denying the proposition that if the relation of Pilkey to the plaintiff was such as to make him plaintiff's trustee in the Washington

FORFEITURE.

location, he might be charged as such in a proper proceeding for that purpose as to any interest, if any, he might have therein.    Saunders et al. v. Mackey, 6 Pac. Rep. 361; Hunt v. Patchin, 35 Fed. Rep. 816.    But this is an action of eject-ment based upon the Sampson location which had become forfeited.

(4)    It appears from the transcript that this case was tried in the court below upon a theory that the lands in con-troversy were not open to location as lands of the United States, being a part of the Cochiti grant as claimed.  The court evidently was led into this error by the contention of counsel for plaintiff, and by the implied or actual ad-mission of counsel for defendants. The case was tried upon the question of prior possession in the plaintiff and whether he had lost his actual possession by abandonment at the time of the entry by the locators of the Washington.    This led to the introduction of a vast amount of testimony concerning actual possession and acts and intentions of plaintiff as to abandonment of the claim, all of which we have seen was entirely immaterial under the views above expressed.    At the close of the testimony the court took the case from the jury.    It may be that, as the case stood at the close of the trial, under the theory upon which it was tried, there were questions of fact which should have been submitted to the jury.    But the plaintiff in his proof went into all the questions involving the validity or invalidity of his location of the Sampson mine.    He showed every ele-ment of a mining location which he could show, and not only failed to show a valid location, but showed affirmatively that his location was forfeited and void at the time of the location of the Washington mine.    It is therefore clear that to remand this case for a new trial, would be an empty ceremony.    The result of a new trial could not but bring the same result.    The assigning of a wrong reason for an act by the court below is not error if the act done was in law right.    Wisner v. Brown, 122 U. S. 214.    Where the plaintiff's case is inherently and fatally defective and is incurable, the defendant is entitled to

HARMLESS error.

have the judgment affirmed notwithstanding errors of the trial court. Barth v. Clise, 12 Wall. 400; Evans v. Pike, 118 U. S. 241. We decide, therefore, that the court in directing a verdict for the defendant committed no error.

(5) This case was decided by this court at the last term and the cause remanded for a new trial, 50 Pac. Rep. 318. Motion for rehearing was made and allowed. Two points are made in the motion. The second is that the court in its former opinion failed to pass upon the proposition as to the status of lands within claimed grants in New Mexico. As this underlies all questions raised, we have been compelled to examine the whole case.

We can not agree with the conclusion reached by this court on the former hearing of this case. It can not be questioned that it was the duty of plaintiff to see that all requirements as to location were complied with under penalty of forfeiture. He testifies that the first he learned of any adverse claim by defendants was after the expiration of ninety days and that he never visited the claim until long afterwards. Plaintiff failed to show or offer to show that he was prevented in any way from perfecting his location by reason of any unlawful entry and ouster by defendants prior to the expiration of the ninety days, and he showed the location under which defendants testified to have been made after the ninety days expired. Upon this state of facts this court upon a former hearing held that it was immaterial for the plaintiff to be permitted to show any act of dominion or adverse possession by defendants prior to the expiration of the ninety days as an excuse for his failure to perfect his location. But we can not agree to this conclusion. These acts of defendants, if any were done, must have in some way prevented the plaintiff from perfecting his location. It can not be said that a locator may calmly wait until his location becomes forfeited and then offer as an excuse the fact that he afterwards learns that others were holding adversely to him, during the time he might have perfected his claim. If he was prevented from perfecting his claim by a

LOCATION:
forfeiture.

wrongful intrusion and by threats of violence if he should attempt to resume possession, this would furnish a complete excuse.    Erhardt v. Boaro, 133 U. S. 527-534.    But no such proof was offered.    If this were an action of trespass for damages to the premises while plaintiff had the right to them, such proof might be material.    But we can not see how it can be in view of the facts in this case.    Another portion of the opinion deals with the question of abandonment and the proof competent thereunder, but in our view of the case this discussion is not pertinent.    We can not follow the conclusion reached at the former hearing by this court and the same is overruled.

This disposes of all the assignments of error.    We find no reversible error in the record and the judgment of the lower court will be affirmed.    And it is so ordered.

Mills, C. J., Crumpacker and McFie, JJ., concur; Leland, J., did not sit in this case.