273 P.2d 381

**FLANAGAN et al. v. BENVIE et al.**

No. 5679.

Supreme Court of New Mexico.

Aug. 5, 1954.

Garland, Sanders & Cooney, Las Cruces, for appellants.

W. C. Whatley, W. B. Darden and La Fel E. Oman, Las Cruces, for appellees.

LUJAN, Justice.

This is a suit instituted by the plaintiffs (appellants), suing in behalf of themselves and others similarly situated against the defendants (appellees) to have a certain tax deed issued to George W. Benvie, Joseph P. Medinger and Thomas H. Colcott declared void and to have it cancelled. The cause was tried to the court without a jury and it resolved the issues in favor of defendants and plaintiffs appeal.

At the conclusion of the trial the court made the following findings of fact:

"(1)   The organization now in existence known as the Las Cruces Rifle and Pistol Club is a voluntary organization without legal capacity, having its inception during the summer of the year 1946 under the name of the Dona Ana Rifle and Pistol Club, and such present organization has no connection of any kind or character with the former Las Cruces Rifle and Pistol Club designated as assignee of tax sale certificate No. 5617, dated December 9, 1938, and assigned to the said Las Cruces Rifle and Pistol Club on May 20, 1940, and designated as grantee in tax deed No. 721, dated December 14, 1940.

(2)   That the former Las Cruces Rifle and Pistol Club designated as assignee of the said tax sales certificate No. 5617 and as grantee in tax deed 721, as aforesaid, was a voluntary association without legal capacity to take or hold any interest in real estate by virtue of the said assignment of tax sales certificate No. 5617, or by virtue of the tax deed No. 721.

(3)   That the said tax sales certificate No. 5617 and the said tax deed No. 721 do not afford the means of ascertaining with certainty who the assignees or grantees were, and there is no evidence before the court as to who the individual members of the said Las Cruces Rifle and Pistol Club were as of the date of the said assignment of tax sales certificate No. 5617 or as of the date of tax deed No. 721; except that there is evidence and it is proved,

and the court finds that the defendants, George W. Benvie and Joseph P. Medinger, were members of said Club at said date and time and continued to be such until the Club disbanded and were the last two remaining members thereof. That they paid its outstanding bills; that funds of the Club were exhausted; that they purchased the tax sale certificate with their own money.

(4) The plaintiffs J. M. Flanagan and Donald T. Law were not members of the Las Cruces Rifle and Pistol Club as of the date of the assignment of tax sales certificate No. 5617 or as of the date of tax deed No. 721.

(5) That the defendant Thomas H. Colcott was not a member of the original Las Cruces Rifle and Pistol Club at any time, and that his only connection with the present organization by that name was an inactive member for a period of one year during the years 1946–1947 when the association was known as the Dona Ana County Rifle and Pistol Club.

(6) The only offer of contribution or reimbursement to the defendants for the amount paid as consideration for the tax deed granting the premises in question to the defendants George W. Benvie and Thomas H. Colcott, and one Joe P. Medinger, dated January 28, 1946, was made by and on behalf of the present members of the Las Cruces Rifle and Pistol Club, and was coupled with the demand that the whole of the premises in question should be conveyed by the defendants to the present organization by the name of Las Cruces Rifle and Pistol Club."

From the foregoing the court deduced as conclusions of Law:

"(1) The Las Cruces Rifle and Pistol Club as of May 20, 1940, as of December 14, 1940, and at all other times was a voluntary association without legal existence or capacity to take or hold any interest in real estate within the State of New Mexico.

(2) The legal title to the property did not vest in the Las Cruces Rifle and Pistol Club as such under and by virtue of the tax deed of 1940. But the assessment of the property for taxes thereafter in the name of said club was a valid assessment and the subsequent sale for delinquent taxes was supported by a valid assessment. The defendants, Benvie and Medinger, as the last active members of the club, were not thereby trustees for all the previous members of the Club whose membership had lapsed, and they owed no duty out of their own funds to protect or preserve for said former members the property that had been taken or held in the name of the Club; and after the Club had

disbanded and no longer existed, said defendants were not precluded from purchasing at said tax sale and taking the tax title in their own name, and in making such purchase, they were not trustees.

(3) The plaintiffs, J. M. Flanagan and Donald T. Law have no right or interest whatever in the lands in question nor do the present members of the present organization by the name of the Las Cruces Rifle and Pistol Club have any right or interest whatever in the said lands in question.

(4) No proper offer of contribution or reimbursement by anyone having the legal right to make such contribution or reimbursement has been made to the defendants or either of them.

(5) The plaintiffs have failed to establish any right or interest whatever in the real estate in question in themselves or in any of the class of persons on whose behalf they have brought this action."

Counsel for plaintiffs contend that the court erred in making the above findings and conclusions because not supported by the evidence; and also in refusing requested findings and conclusions submitted by them.

Suffice it to say that we have carefully examined the entire record and conclude that there is sufficient evidence of a substantial nature to support the above findings and the conclusions based thereon, except as to a part of conclusion of law No. 2, which will be discussed hereafter. This being so they will not be disturbed by us. Guzman v. Avila, 58 N.M. 43, 265 P.2d 363.

No question is raised as to the legality of any of the proceedings leading up to, and culminating in, the tax deed in question.

We recognize that unincorporated associations, clubs and societies, unless recognized by statute, have no legal existence, and ordinarily are legally incapable in their associate name of taking and holding either real or personal property, The rule is stated in 7 C.J.S., Associations, § 14 (1), page 38, as follows:

"Generally speaking an unincorporated association may not, as such, take or hold property, although its members may hold property jointly as individuals."

The text at that point comments upon the rule in this language:

"In the absence of a statute empowering it to do so, it is ordinarily held that an unincorporated association, having no legal existence independent of the members who compose it, is

incapable, as an organization, of taking or holding either real or personal property in its associate name, and that a conveyance to an unincorporated association passes title to no one; but there is some authority to the contrary, * * * (Town of Gravette v. Veach, 186 Ark. 544, 54 S.W.2d 704).

*   *   *   *   *   *

"In any event, the members of a voluntary association may take and hold property jointly as individuals, and accordingly a grant to an association name may, under the circumstances, be construed as a grant to its members, and a gift to an association by name, if not impressed with any trust or charitable use, may vest in the persons composing the society."

And in 4 Am. Jur. Associations & Clubs, page 477, Section 35, it is said:

"Unincorporated associations, clubs, and societies, unless recognized by statute, have no legal existence. Accordingly, in the absence of statutory authorizations, such organizations cannot take or hold property in the associate name, either by way of gift or purchase. Property ostensibly held by such unincorporated bodies is deemed to belong jointly to the members. * * *"

See, also, Moffat Tunnel League v. United States, 289 U.S. 113, 53 S.Ct. 543, 77 L.Ed. 1069; Karges Furniture Co. v. Amalgamated Woodworkers Local Union No. 131, 165 Ind. 421, 75 N.E. 877, 2 L.R.A.,N.S., 788, 6 Ann.Cas. 829.

To avoid the inconvenience resulting from the incapacity of certain voluntary associations to take and hold property as an organization, our Legislature has made provisions that any voluntary association for the promotion of their mutual pleasure or recreation of any hunting, fishing, camping, golf, country club, or association for a similar purpose, may hold and acquire real or personal property by deed, lease or otherwise, in the name of such association by which it is known, and to acquire title to any property by purchase or otherwise for its objects and purposes, which property shall be deemed in law to be held by said club or association for the use and benefit of the actual and active members thereof composing said association from time to time. * * * and upon the termination of any membership therein, the interest in the property shall cease. Section 52–101 et. seq. 1941 Compilation. This statute which is still in full force and effect, not only authorizes and provides that such voluntary associations may take by deed, lease or otherwise, certain real and personal property, but provides the method by which such voluntary associations may dispose of said real estate.

■ The original Las Cruces Rifle & Pistol Club not having organized under the provisions of the above statute, was a voluntary association having no legal entity separate and apart from its own members. Like all other unincorporated associations by becoming a member unless the articles or laws of the association provide otherwise a person acquires not a severable right to any of its property or funds but merely a right to the joint use and enjoyment thereof so long as he continues to be a member.

"* * * So long as he remains a member of the association, however, he has an absolute right, which the courts will protect, to have its property and funds controlled and administered according to its organic plan, and to participate in its affairs in harmony therewith." 7 C.J.S., Associations, § 27a, p. 69.

■ And, upon the dissolution of a voluntary association, "one who ceased to be a member prior to the dissolution is not entitled to share in the distribution, since the interest of a member in the property of the association ceases on the termination of his membership". 5 C.J. p. 1339, sec. 22; 7 C.J.S., Associations, § 10.

"When a person ceases to be a member of a voluntary association, his interest in its property and funds likewise ceases, and the remaining members become jointly entitled thereto, whether his membership, is terminated by his own act or omission or by the act of the society. This rule applies even where a number of members secede in a body, and although they constitute a majority, and organize a new association. In such case the remaining members, and only they, are entitled to the entire funds and property of the association, so long as they continue to keep it alive and adhere to its purposes." Id., p. 1360, sec. 87; See also, 7 C.J.S., Associations, § 27.

Upon this point see Alchenburger v. Freundschaft Lodge No. 72, D.O.H., 138 Ill.App. 204, affirmed 235 Ill. 438, 85 N.E. 653; McFadden v. Murphy, 149 Mass. 341, 21 N.E. 868; Altmann v. Benz, 27 N.J.Eq. 331.

We have no doubt, if either real or personal property belongs to members of a voluntary unincorporated association, if a member abandons the association, he thereby abandons his interest in such property. It is equivalent to a renunciation of his right, and those who remain and succeed are entitled to such right.

Counsel for the plaintiffs invoke the rule that one who occupies a fiduciary relation to another in respect to business or property, and who by the use of the knowledge or interest he obtains through that relation, or by the betrayal of the confidence reposed in him under it acquires a title in the sub-

ject matter of the transaction antagonistic to that of his correlate, thereby charges his title or interest with a constructive trust for the benefit of the latter which the cestui que trust may enforce or renounce at his option, and they insist that under this rule the defendants' title was charged with a constructive trust in favor of the plaintiffs and the people they represent. The rule is wise and salutary, and should be carefully and rigorously enforced in all cases to which it lawfully applies. But, like every rule and principle of the law, it is founded in a controlling reason which is its life, and, where the reason ceases, the rule is impotent. The reason is that no one may profit by a betrayal of the confidence of his correlate and by the use, to the latters' detriment, of knowledge or interest acquired by means of the fiduciary relation. The text of the existence of a constructive trust is the fiduciary relation, and the betrayal of the confidence reposed under it to acquire the property or interest of the correlate, and, in the absence of either of the indispensible elements, no such trust can arise. Trice v. Comstock, 8 Cir., 121 F. 620, 57 C.C.A. 646, 61 L.R.A. 176.

■ General statements from text books and some authorities have been cited to the effect that one who occupies a fiduciary relationship to the owner to care for property or to pay taxes upon it takes any tax title he acquires in trust for the owner.

14 Am.Jur. page 119 et seq.; 51 Am.Jur. page 918 et seq.; Pomeroy's Equity Jurisprudence (3rd Ed.) Vol. 1, page 179, Section 155; page 2008, Sections 1044 and 1053; Hope of Alabama Lodge of Odd Fellows v. Chambless, 212 Ala. 444, 103 So. 54; Angle v. Chicago, St. P., M. & O. Ry. Co., 151 U.S. 1, 14 S.Ct. 240, 38 L.Ed. 55; Riley v. Bank of Commerce of Roswell, 37 N.M. 338, 23 P.2d 362; Torrez v. Brady, 37 N.M. 105, 19 P.2d 183; Smith v. Borradaile, 30 N.M. 62, 227 P. 602; but these cases are not inconsistent with the reason and the rule that some betrayal of confidence, some breach of duty, some bad faith, some abuse of fiduciary relation is indispensible to the creation of such a trust. A constructive trust of this nature is the creation of a court of equity. But such a court never raises it unless the holder of the title has been guilty of some breach of duty; for a court of equity can act only on the conscience of a party. If he has done nothing wrong that taints it, no demand can attach upon it so as to give any jurisdiction. A purchaser chargeable with such a trust is a trustee ex maleficio or a trustee de son tort, and, if he has been guilty of no wrong, he is no trustee. Boone v. Chiles, 10 Pet. 177, 209, 9 L.Ed. 388; U. S. v. Detroit Timber & Lumber Co., 8 Cir., 131 F. 668, 678, 67 C.C.A. 1, 11; U. S. v. Northern Pac. R. Co., 8 Cir., 95 F. 864, 880, 37 C.C.A. 290, 306; Kinne v. Webb, 8 Cir., 54 F. 34, 39, 4 C.C.A. 170, 175.

Therefore, if a trust relationship exists it must be a trust which a court of equity will raise where the circumstances require its establishment. A court of equity will raise a constructive trust, even where there is no fraud, whenever the circumstances of the transaction are such that the person who takes the legal estate may not enjoy the beneficial interest therein, as against the other party, to the transaction, without violating some established principle of equity. Kochorimbus v. Maggos, 323 Ill. 510, 154 N.E. 235.

Counsel proceeds on the theory of a fiduciary relationship between plaintiffs and defendants and the group they represent, but let us inspect the record and see what it reveals to establish the relation of trust between, Benvie, Colcott and Medinger as of January 28, 1946.

It is shown that the original Las Cruces Rifle & Pistol Club was organized during the year 1934, under a charter issued to it by the National Rifle Association of America, Washington, D.C. The plaintiff Flanagan joined this club in 1938, paid his dues for the years 1938–1939, but never paid any further dues thereafter. He left the State of New Mexico in 1939 with the New Mexico National Guard and did not return until June 1946. On December 14, 1940, the club acquired the land in question through a tax deed issued to it by the treasurer of Dona Ana County. It ceased to exist during the year 1942, because there was no funds and no members. The members quit paying their dues, with the exception of George W. Benvie and Joseph P. Medinger, who were the only members left in good standing at the time it disbanded. The charter that had been issued to it by the National Rifle Association was revoked and all equipment belonging to it was returned. On January 21, 1944, the land was sold for delinquent taxes for the year 1942 to the State of New Mexico. The same not having been redeemed within the statutory period it was sold to George W. Benvie, Joseph P. Medinger and Thomas H. Colcott, and a tax deed was issued to them as of January 28, 1946. On June of 1946 a new club was organized under the name of the Dona Ana County Rifle and Pistol Club, and shortly thereafter Flanagan joined this club. This club received a charter from the National Rifle Association of America and continued to function under that name for approximately one year when it changed its name to the Las Cruces Rifle & Pistol Club. Its charter was revoked by the national association and a new charter was issued to the newly named club. The plaintiff Donald T. Law became a member of the last club in 1948.

We assume, but only for the purpose of this phase of the case, that the defendant Benvie during the years 1938 and 1939, stood in a fiduciary relation to plain-

tiff Flanagan, with respect to any funds or property which the original Las Cruces Rifle & Pistol Club owned. However, this relationship terminated when Flanagan failed and neglected to pay any further dues to the club, and the court was clearly right in concluding that Flanagan and Law had no right or interest whatever in the lands in question nor did any members of the present Las Cruces Rifle & Pistol Club.

 We conclude that district court's conclusion of law which recites, in substance, that the defendants, Benvie and Medinger, derived their title to the land in question by virtue of a tax deed, is erroneous. The fact is that since these defendants were the only remaining active members of the original rifle and pistol club at the time it disbanded, the tax deed issued to them merely effectuated a redemption. Under this view, the district court rendered the proper judgment, even though it based it on a wrong theory. Lockhart v. Wills, 1898, 9 N.M. 344, 54 P. 336; Lopez v. Townsend, 1938, 42 N.M. 601, 82 P.2d 921; State ex rel. Sanchez v. Stapleton, 1944, 48 N.M. 463, 152 P.2d 877; Sena v. Sanders, 1950, 54 N.M. 83, 214 P.2d 226; Natseway v. Jojola, 1952, 56 N.M. 793, 251 P.2d 274; Wiggs v. City of Albuquerque, 1953, 57 N.M. 770, 263 P.2d 963.

The action of the district court in dismissing plaintiffs' complaint at the conclusion of the entire case was correct.

The judgment is affirmed.

It is so ordered.

McGHEE, C. J., and COMPTON, J., concur.

SADLER and SEYMOUR, JJ., concur in the result.