C. P. DeBRUYN, Mrs. C. Fulton, and
Carolyn Whitney, Appellants
(Defendants below),

v.

GOLDEN AGE CLUB OF CHEYENNE,
Wyoming, a Wyoming Corporation,
Appellee (Plaintiff below).

No. 3312.

Supreme Court of Wyoming.

March 5, 1965.

Tosh Suyematsu, Cheyenne, for appellant. No appearance for appellee.

Before PARKER, C. J., and HARNS-BERGER and GRAY, JJ.

Mr. Justice GRAY delivered the opinion of the court.

In the year 1949 some 110 individuals fifty or more years of age organized a voluntary, unincorporated association under the name of "Golden Age Club of Cheyenne, Wyoming," for the purpose of enriching the lives of its members through recreation and social activities. Bylaws were adopted regulating the internal affairs of the club. For several years the club functioned in peace and harmony and during that time the club acquired certain personal property consisting principally of kitchen equipment, dishes, silverware, linens, and other small items used for club purposes. By February 1, 1962, it had also accumulated a balance of $522.79 in a checking account at a local bank. On or about that date, as disclosed by the record, some animosity developed between certain members of the club. Within a short time disharmony prevailed, and in the vernacular the members proceeded to "choose up sides" and became divided into two groups. Simply for clarification, we shall adopt the term used by appellant and identify one group as the "splinter" group. The other group we shall identify as the "loyal" group.

For a period of time functions of the club were suspended and during that time certain members of the "loyal" group went to Carpenter's Hall, where the meetings of the club were held, and removed all of the personal property above described and have continued in possession thereof during all of the times herein. They also undertook to safeguard the bank deposit from appropriation by the "splinter" group.

Early in April 1962 the "splinter" group, consisting of about eighty members, proceeded to organize a nonprofit corporation having for its purpose the same activities for which the first club was organized. It obtained a charter from the State pursuant to the statutes under the corporate name of

"Golden Age Club of Cheyenne, Wyoming," which, of course, was the identical name of the club from which the "splinter" group had seceded. It is also disclosed by the record that plaintiff in carrying out its functions and activities has used the name for all purposes and has made no effort so far as the public is concerned to differentiate or distinguish its club from the original club.

Following this a dispute arose between the two groups as to their respective rights in the personal property and the bank account of the original club. Unable to settle their differences, the plaintiff commenced a declaratory judgment suit against three individual directors of the original club, seeking a declaration of the respective interests of the parties in the property above described. The defendants answered and in substance denied that plaintiff had any right, title, or interest in such property. By way of a cross-claim the defendants alleged that the corporate name of plaintiff was so similar to that of the original club that it was bound to "mislead and confuse the respective identities which represent different and antagonistic interests." The prayer of the cross-claim was for an injunction to restrain plaintiff from continuing the use of its corporate name. There were no pretrial motions with respect to parties or with respect to the pleadings. At the trial the cross-claim was further amended by the defendants, alleging that plaintiff had unlawfully taken and detained a scrapbook belonging to the original club, and requested the court to direct plaintiff to deliver the same to the rightful owner.

On May 1, 1964, the trial court made a general finding that the property in dispute should be equally divided between the plaintiff and the unincorporated association represented by the defendants and entered judgment directing defendants to deliver over to plaintiff one-half of such property. The trial court also denied the injunction sought by defendants on the cross-claim. From such judgment the defendants appeal.

The first point advanced by defendants is that the trial court erred in awarding one-half of the property involved to the plaintiff.

 At the outset we think we might simplify matters with respect to this claim of error by pointing out the provisions of § 17–161, W.S.1957, pertaining to unincorporated associations. In substance the statute grants to such an association the right to acquire property not exceeding in value the sum of $25,000 in its own name, and among other things to hold the same for the "use and benefit" of the members. The statutory provisions are consonant with the general rule that a member of such an association, absent provision in the bylaws (which is the case here), acquires no severable right to any of the property or funds of the association. The extent of such right or interest is limited to the joint use and enjoyment of the property and funds. Lamm v. Stoen, 226 Iowa 622, 284 N.W. 465, 467, 121 A.L.R. 627; Flanagan v. Benvie, 58 N.M. 525, 273 P.2d 381, 384; State v. Rice, 206 Or. 237, 291 P.2d 1019, 1022; Apostolic Faith Mission of Portland, Oregon, v. Christian Evangelical Church, 55 Wash.2d 364, 347 P.2d 1059, 1061. The status of that right following termination of a membership is not regulated by the statute and in the instant case is not regulated by any provision of the bylaws. However, counsel for defendants directs our attention to the general rule stated in 7 C.J.S. Associations § 27b, p. 70, amply supported by authorities, and insists that such rule is here applicable. The rule is stated as follows:

"In the absence of provisions in the constitution or by-laws giving members an individual interest in the assets of a voluntary association, members who withdraw thereby lose their rights to associate property, title to which stays in the members remaining in the association, and the rule applies whether membership is terminated by the member's own act or omission or by the act of the society. This rule applies even where a number of members se-

cede in a body, and although they constitute a majority, and organize a new association. In such case the remaining members, and only they, are entitled to the entire funds and property of the association, so long as they continue to keep it alive and adhere to its purposes."

We agree with counsel. Plaintiff admits that the original club has never been dissolved and the evidence is uncontroverted that the "loyal" group has continued to carry on its functions. Also, although the record is quite obscure with respect to the manner in which the members of the "splinter" group disassociated themselves from the original club, there was some evidence to support the implied finding of the trial court that those members did actually withdraw. That was a factual question and the finding is not challenged. Consequently we hold that in so doing they abandoned any right or interest they had as members of the original club. Liggett v. Koivunen, 227 Minn. 114, 34 N.W.2d 345, 350; Flanagan v. Benvie, supra, at 273 P.2d 385; Henry v. Cox, 25 Ohio App. 487, 159 N.E. 101, 102. They had no right, title, or interest in the property of the club that they could take with them. And, of course, the error becomes even more pronounced when it is considered that there is a total lack of evidence indicating that those members even attempted to transfer an interest or right in the property to the plaintiff corporation. Plaintiff, under any circumstance, failed to prove any right, title, or interest in the property.

The next point urged by defendants is that the trial court erred in refusing to grant an injunction on their cross-claim restraining plaintiff from continuing to use the name "Golden Age Club of Cheyenne, Wyoming."

 Defendants insist that they acquired some protection by recording the name "Cheyenne Golden Age Club" pursuant to the trade-mark statute, § 40–1, W. S.1957. We call attention to the discrepancy in the name registered and the true and correct name of the original club. As to this we find the record in a state of confusion. For such reason, and for the further reason that we can dispose of this case without inquiring into the question, the point will not be discussed. That is so because the statute is permissive and the fact, if it be a fact, that defendants acquired no rights thereunder would not serve to preclude the defendants from resort to equitable remedies to enforce whatever pre-existing rights they had to prevent the "splinter" group from appropriating the name of the original club. Faisan v. Adair, 144 Ga. 797, 87 S.E. 1080, 1081, Ann.Cas. 1918A, 243, 148 Ga. 403, 96 S.E. 871, certiorari denied 248 U.S. 583, 39 S.Ct. 136, 63 L.Ed. 432; Prince Hall Grand Lodge of Free and Accepted Masons v. Worshipful King Solomon Grand Lodge, A. F. & A. M. (Colored), 62 N.M. 255, 308 P.2d 581, 583.

The question then is: Were the defendants entitled to protection? In this connection we are uninformed as to the theory advanced by plaintiff below, which would sustain its right to appropriate the identical name of the original club. It has filed no brief. Defendants' theory is that they are entitled to protection under principles of the general law relating to infringement of a property right in a name that has been trade-marked and unfair competition. As stated above, we do not inquire into the effect of the trade-mark statute, but in any event for purposes of this case we think it unimportant which branch of the law we pursue. Either branch rests upon the same general principles. Bernstein v. Friedman, 62 Wyo. 16, 160 P.2d 227, 229. Neither do we find it necessary to inquire deeply into the general field of unfair competition. We are not here dealing with a commercial enterprise. Numerous cases have fairly well crystallized the law applicable to non-profit organizations and associations, whether incorporated or unincorporated. It is well to keep in mind also that the parties involved are small local clubs, purely social, and unaffiliated with any state-wide or national group.

At the outset we recognize, of course, that it was not unlawful per se for plaintiff to select whatever name was open to it under the statutes regulating the chartering of corporations. Even so, that does not enhance or alter plaintiff's right to use of the name "Golden Age Club of Cheyenne, Wyoming," as against prior rights of the defendants. 1 Nims, Unfair Competition and Trade-Marks, §§ 82 and 83, pp. 247–251 (4th Ed.); 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition § 30, p. 264. And in this connection we think the record rather conclusively establishes that defendants did have rights in the name superior to those claimed by plaintiff. The name was adopted by the original club in the year 1949. The predominant words of the name are "Golden Age Club." Considering the purposes for which the club was formed, the words, although descriptive, are particularly appropriate and distinctive. That the name acquired a "secondary meaning" is reasonably to be inferred from the fact that plaintiff, without effort to qualify or distinguish, appropriated the name and has for a period of almost two years tenaciously clung to its asserted right to use the name in identical form. The inference is further strengthened by the testimony of Mr. Frank Schoat, a leader of the "splinter" group, that "they wanted to keep the name of Golden Age Club which has been responded [sic respected] by the City of Cheyenne for a good many years," which could only be taken to mean that the name was well known and respected by the people of Cheyenne. So, while we would agree that defendants could not exclusively appropriate to their own use the name "Golden Age Club," they were nevertheless entitled to protection if the natural result of the use of the same name by plaintiff was to confuse, mislead, or actually deceive the public. Bernstein v. Friedman, supra, at 160 P.2d 232; Brown v. Hook, 79 Cal.App. 2d 781, 180 P.2d 982, 991; Order of Owls v. Owls Club of McKees Rocks, D.C.Pa., 99 F.Supp. 555, 560; Annotation 76 A.L.R.2d 1399.

The right of defendants to seek injunctive relief can scarcely be questioned. The general rule is well stated in 6 Am.Jur. 2d, Associations and Clubs, § 16, p. 442, as follows:

"The prevailing doctrine is that an unincorporated benevolent, fraternal, or social organization is entitled to protection against the use of its name by another organization, and may resort to injunctive relief to restrain the use of its name by others, unless the right is lost by acquiescence and laches. * * *

"Ordinarly, the fact that one of the associations has incorporated under the disputed name will give it no superior or exclusive right thereto or deprive the unincorporated association of its rights. Not even seceders from the parent body may thus usurp the name of the unincorporated society."

As indicated, a few courts have taken a somewhat tolerant view of a schismatic group adopting some part of the name of the original association. For example, see Supreme Lodge Knights of Pythias v. Improved Order Knights of Pythias, 113 Mich. 133, 71 N.W. 470, 38 L.R.A. 658, often cited as sustaining that view. See also Perham v. Richman, C.C.E.D.Pa. (1907), 158 F. 546, 548; Annotations 76 A.L.R.2d 1419, 1420. However, and aside from the fact that the reasoning of Knights of Pythias has been criticized, the court even there, absent a showing of abandonment, relinquishment, or a similar lawful excuse, made it clear that adoption by such a group of the identical name of the original club could hardly be countenanced. The rule invariably followed is that a court of equity will not hesitate to exercise its full power to protect "the standing and good will" of the original club under such circumstances. Purcell v. Summers, 4 Cir., 145 F.2d 979, 984; Order of Owls v. Owls Club of McKees Rocks, supra; Red Polled Cattle Club of America v. Red.Polled Cattle Club of America, 108 Iowa 105, 78 N.W. 803, 805; Kline v. Knights of the Golden Eagle, 113

N.J.Eq. 513, 167 A. 758, 759–760; Annotation 76 A.L.R.2d 1415.

On the basis of what has been said, we think the solution to the question presented here is quite simple and uncomplicated. There had been no abandonment or relinquishment of the name by defendants. In view of plaintiff's own evidence that it purposely purloined the identical name of the original club to obtain the benefits of the name in the community of Cheyenne, Wyoming, no other conclusion could be reached than that it was done for the very purpose of acquiring at least a part of the standing and good will of the defendants' association. Unless restrained, plaintiff also stands to profit by deceiving prospective members and the public as to the true identity of the club with which they are dealing. The fact that defendants failed to prove actual instances of confusion, deception, or pecuniary damage is not fatal. Sufficient is shown to establish that continuing use of the name by plaintiff will tend to confuse, mislead, or deceive the public. That was enough to meet defendants' burden. Bernstein v. Friedman, supra, at 160 P.2d 233, 234. Consequently we hold that the court erred in denying the injunction.

Lastly, defendants complain of the trial court's failure to pass upon the issues raised with respect to the "scrapbook." It is clear from the record that such failure was an oversight, no doubt occasioned by the informal manner in which the issue was tendered. However, such oversight was never formally brought to the attention of the trial court, and as a consequence the question is not before us.

In conclusion may we say that we are not unsympathetic with the effort of the trial court to exercise its equitable powers in such a way as to avoid loss to the large number of members of each group that seem to have been victimized by the mess resulting from the irresponsible acts of a few stubborn and uncompromising individuals. Nevertheless, for the reasons stated, we are constrained to hold that there are cases—and this is one—where the length of the "chancellor's foot" is circumscribed by applicable law.

The judgment is reversed with instructions to enter judgment for the defendants in conformity with the foregoing.

Reversed and remanded.

McINTYRE, J., not participating.