IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:**_____

**Filing Date:   June 15, 2015**

**NO. 34,719**

**NEW MEXICO BUILDING AND CONSTRUCTION TRADES COUNCIL, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 611, and SHEET METAL WORKERS LOCAL 49,**

Petitioners,

v.

**JASON DEAN, in his capacity as Director of the LABOR RELATIONS DIVISION of the DEPARTMENT OF WORKFORCE SOLUTIONS of the STATE OF NEW MEXICO,**

Respondent,

and

**CELINA BUSSEY, Secretary of the DEPARTMENT OF WORKFORCE SOLUTIONS of the STATE OF NEW MEXICO,**

Real Party in Interest,

and

**ASSOCIATED BUILDERS AND CONTRACTORS, NEW MEXICO CHAPTER, INC., and NORTHERN NEW MEXICO INDEPENDENT ELECTRICAL CONTRACTORS, INC.,**

Interveners-Real Parties in Interest.

**ORIGINAL PROCEEDING**

Youtz & Valdez, P.C.
Shane Youtz
Stephen Curtice
James A. Montalbano
Albuquerque, NM

for Petitioners

Law Office of Jason Lewis
Jason J. Lewis
Albuquerque, NM

New Mexico Department of Workforce Solutions
Marshall J. Ray
Albuquerque, NM

for Respondent and Real Party in Interest

Bingham, Hurst, Apodaca, & Wile, P.C.
Wayne E. Bingham
Albuquerque, NM

for Intervener-Real Parties in Interest

Hector H. Balderas, Attorney General
Scott Fuqua, Assistant Attorney General
Santa Fe, NM

for Amicus Curiae
New Mexico Attorney General

**OPINION**

**MAES, Justice**

{1} In this case, we determine whether the Director of the Labor Relations Division (the Director) of the New Mexico Department of Workforce Solutions (DWS) is in violation of the Public Works Minimum Wage Act (the Act), NMSA 1978, §§ 13-4-10 to -17 (1937, as amended through 2011), for failing to set prevailing wage rates and prevailing fringe benefit rates for public works projects in accordance with collective bargaining agreements (CBAs). We hold that under the Act the Director has a mandatory, nondiscretionary duty to set the same prevailing wage and prevailing benefit rates as those negotiated in applicable CBAs and that the Director's failure to do so violates the Act. We therefore issue a writ of mandamus ordering the Director to comply with the Act and set rates in accordance with CBAs as required under the Act within thirty days of the issuance of this opinion.

**I.    BACKGROUND**

{2} Petitioner New Mexico Building and Construction Trades Council is an alliance of craft unions representing the interests of thousands of New Mexico employees working on public works projects throughout the State. Petitioners International Brotherhood of Electrical Workers Local 611 and Sheet Metal Workers Local 49 are affiliated members of the Council. Petitioners are hereafter collectively

referred to as "the Unions." Respondent Jason Dean is currently the Director of the Labor Relations Division of DWS. Real Party in Interest Celina Bussey is the Secretary of DWS (the Secretary); Real Parties in Interest Associated Builders and Contractors, New Mexico Chapter, Inc., and the Northern New Mexico Independent Electrical Contractors, Inc., represent contractors performing work on public works projects. The Unions seek a writ of mandamus from this Court directing the Director to set prevailing wage and prevailing benefit rates for public works projects in accordance with rates specified in CBAs in or near a project's locality, as required by Section 13-4-11(B) of the Act.

{3} This is the second time the New Mexico Building and Construction Trades Council has petitioned this Court for mandamus in the matter of DWS compliance with Section 13-4-11(B). In June 2011 this Court denied a petition for writ of mandamus in order to give the Secretary "four or five months" to set prevailing wage and prevailing benefit rates under the Act as amended in 2009. Counsel for the Secretary assured this Court in oral argument that the Director at that time could have rates set within four or five months:

> I would say this could conceivably be done in four or five months, which I don't think is unreasonable, especially since the Secretary has assured me, and I'm assuring the Court, that she's intent on getting this done. I don't think it requires a writ of mandamus to get it done. But,

whatever the Court desires, I'm confident she'll get it done. The director in office in 2009 determined prevailing wage and prevailing benefit rates to take effect on January 1, 2010 using the pre-2009 amendment wage survey method even though the amended Act became effective on July 1, 2009. And to this date, because wages are still not determined under the amendments to the Act that became effective on July 1, 2009, the rates have been the same as those determined by the director in 2009.

{4}     In March 2012 the Secretary promulgated two new regulations, *see* 11.1.2.18 & .19 NMAC, and amended most others, *see* 11.1.2.7 to .17 NMAC (3/15/2012, as amended through 1/15/2014) but has yet to set rates in accordance with the Act as amended in 2009. *See generally* Public Works Minimum Wage Act Policy Manual, 11.1.2 NMAC (7/23/1969, as amended through 1/15/2014). We acknowledge that litigation is currently pending that challenges the March 2012 changes to the regulations as "arbitrary and capricious, not supported by substantial evidence, outside the scope of authority of the Secretary, and otherwise not in accordance with law" and we express no opinion as to the merits of that proceeding. *See* No. D-202-CV-2014-05512 (indicating in the August 22, 2014, notice of appeal to the district court that the Secretary's changes to the regulations failed to adhere to DWS' own

regulations as well as the Act).

## II. THIS COURT'S EXERCISE OF ITS ORIGINAL JURISDICTION IN MANDAMUS IS PROPER TO ADDRESS MATTERS OF GREAT PUBLIC IMPORTANCE IMPLICATING CONSTITUTIONAL SEPARATION OF POWERS QUESTIONS BETWEEN THE LEGISLATIVE AND EXECUTIVE BRANCHES OF OUR STATE GOVERNMENT

{5}     This Court has "original jurisdiction in quo warranto and mandamus against all state officers, boards and commissions." N.M. Const. art. VI, § 3. "Mandamus lies to compel the performance of a ministerial act or duty that is clear and indisputable." *New Energy Econ., Inc. v. Martinez*, 2011-NMSC-006, ¶ 10, 149 N.M. 207, 247 P.3d 286. "A ministerial act is an act which an officer performs under a given state of facts, in a prescribed manner, in obedience to a mandate of legal authority, without regard to the exercise of his own judgment upon the propriety of the act being done." *Id.* ¶ 10 (internal quotation marks and citation omitted).

{6}     This Court will exercise its original jurisdiction in mandamus when the petitioner presents a purely legal issue concerning the non-discretionary duty of a government official that (1) implicates fundamental constitutional questions of great public importance, (2) can be answered on the basis of virtually undisputed facts, and (3) calls for an expeditious resolution that cannot be obtained through other channels such as a direct appeal.

*State ex rel. King v. Lyons*, 2011-NMSC-004, ¶ 21, 149 N.M. 330, 248 P.3d 878 (internal quotation marks and citations omitted).

{7}     The Unions present a purely legal issue concerning whether the Director has a nondiscretionary duty under the Act to set prevailing wage and prevailing benefit rates in accordance with CBAs. Additionally, we recognize that the Director's failure to comply with a mandate of the Legislature would implicate separation of powers concerns. It is duly established that the legislative branch makes the laws, the executive branch executes the laws, and our "Constitution prohibits any branch of government from usurping the power of [an]other branch[ ]." *State ex rel. Taylor v. Johnson*, 1998-NMSC-015, ¶ 20, 125 N.M. 343, 961 P.2d 768 (citing N.M. Const. art. III, § 1). "The balance and maintenance of governmental power is of great public concern." *State ex rel. Taylor*, 1998-NMSC-015, ¶ 17. As such, the Director's undisputed five-year delay in setting rates in accordance with the Act warrants a speedy resolution by this Court. As this Court has repeatedly recognized, "when issues of sufficient public importance are presented which involve a legal and not a factual determination, we will not hesitate to accept the responsibility of rendering a just and speedy disposition." *State ex rel. Bird v. Apodaca*, 1977-NMSC-110, ¶ 5, 91 N.M. 279, 573 P.2d 213. *See also State ex rel. King*, 2011-NMSC-004, ¶ 21 (recognizing the importance of mandamus when timely relief "cannot be obtained through other channels").

**III. MANDAMUS IS PROPER BECAUSE THE DIRECTOR HAS A CLEAR, INDISPUTABLE, AND NONDISCRETIONARY DUTY TO SET PREVAILING WAGE RATES AND PREVAILING FRINGE BENEFIT RATES IN ACCORDANCE WITH CBAs**

{8} The Director and the Secretary argue that mandamus is not a proper remedy because the Director's duty under the Act is discretionary. *See Cook v. Smith*, 1992-NMSC-041, ¶ 5, 114 N.M. 41, 834 P.2d 418 ("Discretionary acts are beyond the reach of the writ." (citations omitted)). The Director and the Secretary cite Section 13-4-11(B)(2) and (B)(3) to argue that in addition to considering CBAs, the Director must give due regard to other data, opinions, and arguments submitted to DWS, including non-CBA wage rate data, in making prevailing wage and prevailing benefit rate determinations, even when applicable CBAs exist. We disagree. A plain reading of Section 13-4-11 and its recent amendment history provides the basis for our reasoning.

{9} The Director is required by the Act to set prevailing wage rates and prevailing fringe benefit rates for all public works projects costing more than sixty thousand dollars to which the State or any political subdivision is a party. Section 13-4-11(A), (B). Prior to 2009, the Act required the Director to obtain and compile wage rate information and give due regard to such information before making a wage rate determination:

6

For the purpose of making wage determinations, the [D]irector . . . shall conduct a continuing program for the obtaining and compiling of wage-rate information and shall encourage the voluntary submission of wage-rate data by contractors, contractors' associations, labor organizations, interested persons and public officers. Before making a determination of wage rates for any project, the [D]irector shall give due regard to the information thus obtained. Whenever the [D]irector deems that the data at hand are insufficient to make a wage determination, the [D]irector may have a field survey conducted for the purpose of obtaining sufficient information upon which to make determination of wage rates. Any interested person shall have the right to submit to the [D]irector written data, views and arguments why the wage determination should be changed.

Section 13-4-11(B) (2005).

{10} In 2009, the Legislature dramatically and deliberately changed the process for setting wage rates. Specifically, the amended statute required the Director to set not only prevailing wage rates, but also prevailing fringe benefit rates, and the setting of those rates would now be based upon CBAs:

The [D]irector shall determine prevailing wage rates and prevailing fringe benefit rates for respective classes of laborers and mechanics employed on public works projects at the same wage rates and fringe benefit rates used in [CBAs] between labor organizations and their signatory employers that govern predominantly similar classes or classifications of laborers and mechanics for the locality of the public works project and the crafts involved; provided that:

(1) if the prevailing wage rates and prevailing fringe benefit rates cannot reasonably and fairly be determined in a locality because no [CBAs] exist, the [D]irector shall determine the prevailing wage rates and prevailing fringe benefit rates for the same or most similar class or

classification of laborer or mechanic in the nearest and most similar neighboring locality in which [CBAs] exist;

(2) the [D]irector shall give due regard to information obtained during the [D]irector's determination of the prevailing wage rates and the prevailing fringe benefit rates made pursuant to this subsection;

(3) any interested person shall have the right to submit to the [D]irector written data, personal opinions and arguments supporting changes to the prevailing wage rate and prevailing fringe benefit rate determination; and

(4) prevailing wage rates and prevailing fringe benefit rates determined pursuant to the provisions of this section shall be compiled as official records and kept on file in the [D]irector's office and the records shall be updated in accordance with the applicable rates used in subsequent [CBAs].

Section 13-4-11(B).

{11} "The primary goal in interpreting a statute is to give effect to the Legislature's intent." *State v. Hubble*, 2009-NMSC-014, ¶ 10, 146 N.M. 70, 206 P.3d 579 (internal quotation marks and citation omitted). "[W]e first look at the words chosen by the Legislature and the plain meaning of those words." *Id.* ¶ 10. "[W]hen a statute's language is 'clear and unambiguous,'" this Court "will give effect to the language and refrain from further statutory interpretation." *Id.* (citation omitted). "Legislative intent is to be determined primarily by the language of the act, and words used in a statute are to be given their ordinary and usual meaning unless a different intent is clearly

8

indicated." *Montano v. Williams*, 1976-NMCA-017, ¶ 26, 89 N.M. 86, 547 P.2d 569 (internal quotation marks and citations omitted). "[I]n construing particular statutory provisions to determine legislative intent, an entire act is to be read together so that each provision may be considered in its relation to every other part, and the legislative intent and purpose gleaned from a consideration of the whole act." *Id.* ¶ 26 (internal quotation marks and citation omitted).

{12}    Section 13-4-11(B) mandates that the Director set rates according to CBAs. Subsections (B)(2) and (B)(3) must be read in conjunction with that statutory mandate. When considered as a whole, it is clear that these subsections do not transform the Director's mandatory, nondiscretionary duty in Section 13-4-11(B) to a discretionary one. These subsections only further clarify the mandatory duty or grant certain rights to interested persons.

{13}    Subsection (B)(2) requires the Director give due regard to information obtained only when the Director is making a determination under Subsection (B)(1), when the rates cannot be determined in a particular locality because no CBAs exist. If no CBAs exist, rates are determined using the "same or most similar class or classification of laborer or mechanic in the nearest and most similar neighboring locality in which [CBAs] exist." Subsection (B)(1). Thus, in the event there are no CBAs in a locality

and the Director must look to CBAs in a nearby, similar locality, or perhaps in the event there are multiple, relevant CBAs in a locality (a circumstance not expressly contemplated by the Act), any discretion conferred upon the Director is limited to the Director determining *which* CBA will be used to set the rates, not *whether* a CBA will be used.

{14}    Although Subsection (B)(3) provides that any interested person may submit data, opinions, and arguments, the statute does not require the Director to give due regard to this information when making wage and benefit rate determinations when applicable CBAs are present. The Director may only consider additional data, opinions, and arguments when choosing among competing CBAs, which could arise under Subsection (B)(1), for example. While it is true that any person may provide input, that input does not change the standard the Legislature has prescribed for determining prevailing wage and prevailing benefit rates. Section 13-4-11(A) makes clear that the Director must set rates pursuant to the standard that Section 13-4-11(B) provides. *See* § 13-4-11(A) (requiring contractors to pay mechanics and laborers unconditionally the full amount of wages and fringe benefits due under Section 13-4-11(B)). That standard dictates the use of CBAs for rate determinations.

{15}    Prior to the 2009 amendment, the Director was required to give due regard to

all information obtained from various sources, including field surveys and non-CBA wage rates. *See* § 13-4-11(B) (2005) ("Before making a determination of wage rates for any project the [D]irector shall give due regard to the information obtained [from these various sources].") With the amendment to the statute, the Legislature imposed a mandatory, nondiscretionary duty on the Director to set prevailing wage and prevailing benefit rates solely according to CBAs. *See* § 13-4-11(B). Furthermore, the Legislature imposed a continuing duty on the Director to update the prevailing wage and prevailing benefit rates according to "applicable rates used in subsequent [CBAs]." Section 13-4-11 (B)(4). "We operate from a working assumption that the Legislature . . . is well informed about the law and that its legislation is usually 'intended to change the law as it previously existed.'" *State ex rel. King*, 2011-NMSC-004, ¶ 50 (citation omitted).

## IV. MANDAMUS IS PROPER BECAUSE THE UNIONS HAVE NO ADEQUATE REMEDY AT LAW

{16}    Mandamus will only issue if there is no "plain, speedy and adequate remedy in the ordinary course of law." NMSA 1978, § 44-2-5 (1884). The Unions represent employees whose wages have been, and continue to be, directly affected by the Director's failure to comply with the Act. Although Section 13-4-15 provides an avenue to appeal "any determination, finding or action of the [D]irector made

11

pursuant to the [Act]," this remedy is wholly inadequate under these circumstances.

{17} It has been over five years since the Act was amended, and the Director still has not set prevailing wage and prevailing benefit rates according to CBAs. DWS has been simply setting the rates the same as those that have been in effect since 2010. The current rates are based on field surveys as dictated by the Act prior to its amendment in 2009. The Director and the Secretary assert that the rates have not been "set" in the last few years but simply *reissued* due to a stay imposed pending the outcome of the litigation regarding the regulations issued by DWS. The Director and the Secretary further argue that because rates have not been "set," Petitioners' injury of reduced wages in the past five years is speculative. We disagree with this characterization. Public works projects have continued since 2010 with mechanics and laborers being paid wages using wage and benefit rates that are now five years old. Semantics aside, wages have been "set" for the purposes of the Act, and after five years with no increase in wage rates, these stale wages are prejudicing the right of every mechanic and laborer on a public works project to be paid a wage rate consistent with applicable CBAs.

{18} From February 2014 to April 2014, the Unions and other labor organizations submitted copies of current CBAs and formal requests for updating the rates to the

12

Director. *See* Section 13-4-11(B)(4) ("[T]he records shall be updated in accordance with the applicable rates used in subsequent [CBAs].") The Unions' petition to this Court summarized and attached these documents. The Unions' documentation shows that the outdated prevailing wage and prevailing benefit rates are not aligned with current CBAs in effect throughout the State. The Unions report that the Director's inaction has resulted in the payment of wage and benefit rates five to thirty-five percent below what is required by the Act for most reported wage categories.

{19}    In recent years a number of separate appeals have been taken from several DWS regulatory actions to district courts, but none have resulted in the setting of new rates in line with CBAs. *See* Nos. D-101-CV-2010-02705; D-101-CV-2010-02758; D-101-CV-2010-03276; D-101-CV-2011-00191, and D-202-CV-2014-05512.The Legislature issued a clear mandate, and the Director must comply. "It is the high duty and responsibility of the judicial branch of government to facilitate and promote the [L]egislature's accomplishment of its purpose." *State v. Stevens*, 2014-NMSC-011, ¶ 15, 323 P.3d 901 (internal quotation marks and citation omitted). To countenance any further delay would be unacceptable and irresponsible. The Director must take immediate action to set prevailing wage and prevailing benefit rates that comply with the Act and reflect current economic realities.

## V. CONCLUSION

{20} For years the prevailing wage and prevailing benefit rates for public work projects have been stagnant due to the Director's delay in issuing new rates under the amended Act. The Director's delay in setting new rates and his failure to comply with the Act is inexcusable. Unless this Court grants the requested writ without further delay, workers on state construction projects will continue to be denied their lawfully-mandated compensation as they have been for the past five years, with no alternative timely remedy to correct the Director's persistent refusal to comply with the law.

{21} We agree with the Unions that under the Act, specifically Section 13-4-11, the Director has a mandatory, nondiscretionary duty to set prevailing wage and prevailing benefit rates the same as those negotiated in applicable CBAs. Within thirty days of the issuance of this opinion, the Director shall set rates in accordance with CBAs submitted to DWS. Thereafter, the Director shall set rates in accordance with relevant CBAs. Finally, prevailing wage and prevailing benefit rates determined by the Director "shall be compiled as official records and kept on file in the [D]irector's office and . . . shall be updated in accordance with the applicable rates used in subsequent [CBAs]." Section 13-4-11(B)(4). This opinion shall serve as our writ of

14

mandamus requiring the Director to comply with the Act as set forth above.

{22}    **IT IS SO ORDERED.**


_____

                **PETRA JIMENEZ MAES, Justice**


**WE CONCUR:**

_____
**BARBARA J. VIGIL, Chief Justice**


_____
**EDWARD L. CHÁVEZ, Justice**


_____
**CHARLES W. DANIELS, Justice**


**RICHARD C. BOSSON, Justice (recused)**

15