**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2018-NMCA-004**

**Filing Date: August 2, 2017**

**Docket No. A-1-CA-34655**

**BLUE CANYON WELL ASSOCIATION,**

      **Plaintiff-Appellee,**

**v.**

**DENISE JEVNE,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Francis J. Mathew, District Judge**

Sommer, Karnes & Associates, LLP
Karl H. Sommer
Santa Fe, NM

for Appellee

Graeser & McQueen, LLC
Christopher L. Graeser
Santa Fe, NM

for Appellant

**OPINION**

**VARGAS, Judge.**

**{1}**    In this appeal we address whether Plaintiff Blue Canyon Well Association (Blue Canyon) was a legal entity with capacity to sue Defendant Denise Jevne. Specifically, we consider the applicability of NMSA 1978, Section 53-10-1 (1937) to Blue Canyon's claim that it was entitled to bring the suit as an unincorporated association. We hold that Blue Canyon's legal capacity to sue Jevne as an unincorporated association is dependent on its compliance with statutory requirements, and because it failed to comply with the statutory requirements, Blue Canyon lacked the capacity to sue Jevne. We reverse the judgment of the

1

district court and remand the case for further proceedings.

## I.  BACKGROUND

**{2}**  The members of Blue Canyon and Jevne are all owners of real property in Santa Fe County that claim to be parties to a well sharing and easement agreement (the Agreement). Blue Canyon was formed to maintain and manage the well pursuant to the Agreement. Some years later, a dispute arose between Jevne and the other owners regarding Jevne's unpaid water well expenses. As a result, Blue Canyon brought a claim against Jevne in magistrate court, seeking $7,651.50 for past due bills, costs associated with well use, and attorney fees and charges. The complaint was signed, "Blue Canyon Well Ass'n: Anna & Joe Durr, Frank & Billie Martinez, Lesley King, President[.]" After a trial on the merits, the magistrate court entered judgment awarding Blue Canyon $2,600.00 in damages and $6,697.02 in attorney fees. Jevne appealed that judgment to the district court.

**{3}**  Shortly after Jevne appealed the judgment, the individuals who signed the complaint on behalf of Blue Canyon (collectively, Movants) filed a motion in district court, seeking to amend the caption of the case in order to "properly identify Plaintiffs" by substituting their names for Blue Canyon. In the motion to amend, Movants pointed out that they had each signed the complaint as individuals on behalf of Blue Canyon, but stated that "while there is a Well Agreement in the matter, there is no Blue Canyon Well Association *per se*." They therefore requested that they be identified as Plaintiffs in Blue Canyon's place. In opposing the motion, Jevne saw the motion as an improper attempt to establish the Durrs' right to use the well. Jevne claimed that the Durrs were not a part of the Agreement and were not valid users without first filing a declaratory judgment action to establish their status. Jevne recognized Blue Canyon's status as an unincorporated association and its power to sue and collect judgments, but requested that the appeal be dismissed in light of Movants' denial of Blue Canyon's existence.

**{4}**  The district court held a hearing on Movants' motion to amend and ordered the parties to provide supplemental briefing. In Movants' supplemental brief, they again asserted that Blue Canyon was "not a legal entity properly formed under Section 53-10-1[,]" and as such, they, individually, were the proper real parties in interest in the case. Having retained new counsel, Jevne changed positions in her supplemental response, arguing that Blue Canyon was a non-existent entity. Jevne also asserted that Movants' motion was actually a motion to substitute parties without complying with Rule 1-025 NMRA and that the case must be dismissed because the judgment in favor of a non-existent entity was "uncollectible."

**{5}**  The district court denied Movants' motion to amend the caption and rejected Movants' claim that Blue Canyon did not exist as a legal entity because it had not complied with the filing requirement of Section 53-10-1 for the creation of an unincorporated association. The district court held that the use of the word "may" in Section 53-10-1 indicated that filing statements and other documents referenced in the statute to create an

2

unincorporated association is permissive. Following a de novo trial on the merits, the district court entered judgment in favor of Blue Canyon and entered findings of fact and conclusions of law that the Agreement was created in March 1991, that Blue Canyon was formed to carry out the requirements of the Agreement, and that Blue Canyon "is an unincorporated association with the capacity to sue and be sued."

**{6}** Jevne filed a motion to amend the judgment and a motion for new trial, both attacking the district court's judgment. The district court held a hearing on Jevne's post-judgment motions, denying both. Jevne appeals, challenging the district court's judgment in Blue Canyon's favor, as well as its denial of those two motions.

## II.    DISCUSSION

**{7}** On appeal, Jevne claims that the district court erred when it held that Blue Canyon was authorized to maintain this action as an unincorporated association notwithstanding that Blue Canyon had not filed the documents described in Section 53-10-1 (statutory documents) with the county clerk. Now forced to argue a position contrary to the position they took in the district court, Blue Canyon first contends that the district court correctly held that the use of the word "may" in the statute renders the filing of any statutory documents by Blue Canyon to be permissive. Furthermore, Blue Canyon argues, because unincorporated associations are recognized by both statute and common law, it is not required to comply with the statutory requirements to be a common law unincorporated association and sue in the name of the association. We are not persuaded by either argument.

### A.    Section 53-10-1 Requires the Filing of Statutory Documents to Form an Unincorporated Association

**{8}** Statutory interpretation is an issue of law that we review de novo. *Moongate Water Co. v. City of Las Cruces*, 2013-NMSC-018, ¶ 6, 302 P.3d 405. The text of a statute is the "primary, essential source of its meaning[,]" and where a statute's language is clear and unambiguous, we are required to "give effect to that language and refrain from further statutory interpretation." NMSA 1978, § 12-2A-19 (1997); *Nat'l Educ. Ass'n of N.M. v. Santa Fe Pub. Schs.*, 2016-NMCA-009, ¶ 6, 365 P.3d 1 (internal quotation marks and citation omitted).

**{9}** A court's "primary goal when interpreting a statute is to give effect to the Legislature's intent[,]" which "is to be determined primarily by the language of the act, and words used in a statute are to be given their ordinary and usual meaning unless a different intent is clearly indicated." *N.M. Bldg. & Constr. Trades Council v. Dean*, 2015-NMSC-023, ¶ 11, 353 P.3d 1212 (internal quotation marks and citation omitted); *see State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 23, 117 N.M. 346, 871 P.2d 1352. "Whether words of statutes are mandatory or discretionary is a matter of legislative intent to be determined by consideration of the purpose sought to be accomplished." *State ex rel. Robinson v. King*, 1974-NMSC-028, ¶ 10, 86 N.M. 231, 522 P.2d 83. We interpret statutes "to avoid rendering

3

the Legislature's language superfluous." *Baker v. Hedstrom*, 2013-NMSC-043, ¶ 24, 309 P.3d 1047. We consider all parts of the statute together, "read[ing] the statute in its entirety and constru[ing] each part in connection with every other part to produce a harmonious whole." *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 14, 121 N.M. 764, 918 P.2d 350.

**{10}**     Section 53-10-1, authorizing the formation of unincorporated associations provides:

> Whenever two or more persons shall desire to form an association for the promotion of their mutual pleasure or recreation . . . or an association not for the individual profit of the members thereof, and without incorporating the same as a corporation, or maintaining title of its property in trust . . .[, t]he said persons or members desiring to form such an association . . . *may file in the office of the county clerk* . . . a statement containing the name of such association, its objects and purposes, the names and residences of the persons forming such association, together with a copy of its articles of association and any rules and/or regulations governing the transactions of its objects and purposes and prescribing the terms by which its members may maintain or cease their membership therein.

(Emphasis added.) We acknowledge, and the parties are quick to point out, that generally, the words "shall" and "must" express a "duty, obligation, requirement or condition precedent" while "may" confers a "power, authority, privilege or right." NMSA 1978, § 12-2A-4(A), (B) (1997). However, in this instance, the power, authority, privilege or right signaled by the use of the word "may" in the statute is not the power, authority, privilege, or right to file documents. Instead, it is the right to form an association as opposed to a corporation, trust, or other legally viable entity. The plain language of Section 53-10-1 clearly sets out that whenever two or more persons wish to form an association for the limited purposes described therein without incorporating or maintaining title to its property in trust, then those persons may do so by filing statutory documents with the county clerk. For those intending to create an association under Section 53-10-1, the filing of statutory documents is mandatory.

**{11}**     This interpretation is consistent with the purpose of Section 53-10-1. While avoiding some of the burdens and complexities associated with the formation of a corporation or a trust, Sections 53-10-1 to -8 (1937, as amended through 1959) (the Act), allow those involved in the limited activities described to enjoy the benefits of acting as a single unit rather than a group of individuals, and limit any recovery of a judgment against the association to its joint or common property, provided they satisfy its abbreviated requirements.

**{12}**     Other sections of the Act confirm the mandatory nature of statutory document filing. First, unless the filing of statutory documents to create an unincorporated association is mandatory, the detailed list of information to be included in the statutory documents set out in Section 53-10-1 would be unnecessary surplusage. Even more persuasive of the

mandatory nature of the statute is the language in Section 53-10-7, which provides, "[a]ny association or club formed under the provisions of [the A]ct . . . may exist for such period of time not exceeding twenty years as may be fixed *in the statement required to be filed by Section* [*53-10-1*]." (Emphasis added.) Were we to interpret the language related to the filing of statutory documents to be permissive, our interpretation would render Section 53-10-1 at odds with Section 53-10-7 describing the document filing as "required." "If statutes appear to conflict, they must be construed, if possible, to give effect to each." NMSA 1978, § 12-2A-10(A) (1997). By interpreting the statutory document filing as mandatory, we avoid a conflict and give effect to the provisions of both Section 53-10-1 and Section 53-10-7.

{13}    Blue Canyon nevertheless argues that the Act is intended to be generally permissive and that equity requires us to interpret Section 53-10-1 to authorize permissive filing. We are not persuaded. Blue Canyon's argument in this regard is largely based on an alternative reading of the plain language in Section 53-10-1. Blue Canyon argues that we should interpret Section 53-10-1 so that the "required to be filed" language is rendered functionally superfluous, reasoning that the word "required" simply "does not carry the same weight or measure of authority" as words like "shall" and "may." Because "we refrain from reading statutes in a way that renders provisions superfluous[,]" we decline to follow Blue Canyon's interpretation, particularly because an interpretation that filing statutory documents is mandatory gives meaning and effect to each term used in the Act. *State ex rel. E. N.M. Univ. Regents v. Baca*, 2008-NMSC-047, ¶ 10, 144 N.M. 530, 189 P.3d 663 (declining to interpret statute as permissive where doing so would render it superfluous).

## B.    Common Law Unincorporated Associations Have No Capacity to Sue

{14}    Blue Canyon argues that it was the proper party to file suit against Jevne because New Mexico law recognizes common law unincorporated associations. New Mexico law, Blue Canyon contends, permits the formation of unincorporated associations either by common law or under the Act, and Section 53-10-5, conferring a right to sue upon unincorporated associations, applies to both statutorily created and common law associations.

{15}    Our Supreme Court, however, long ago resolved the legal viability of unincorporated associations that were not statutorily created. In *Flanagan v. Benvie*, 1954-NMSC-074, ¶ 7, 58 N.M. 525, 273 P.2d 381, the court unequivocally held, "unincorporated associations, clubs and societies, *unless recognized by statute*, have no legal existence[.]" (Emphasis added.) In *Flanagan*, the Court explained that the association's failure to organize in accordance with the statute precluded it from taking advantage of the right conferred by the Act to hold property in the name of the association. *Id.* ¶ 11. Similarly, in *State ex rel. Overton v. N.M. Tax Comm'n*, 1969-NMSC-140, ¶ 14, 81 N.M. 28, 462 P.2d 613, our Supreme Court found that a common law unincorporated association formed to advocate for tax equity was not a legal entity and had no right to bring an action unless its members were permitted to do so as members of a class under Rule 1-023 NMRA.

5

**{16}** The Act grants unincorporated associations formed under Section 53-10-1 a series of rights, including the right to "hold and acquire real or personal property by deed, lease or otherwise, in the name of [the] association," pursuant to Section 53-10-2; the right to mortgage or sell such property, conveying it by deed signed by an officer of the association, pursuant to Section 53-10-3; and the right to sue or be sued in the name of the association, with the collection of any money judgment against the association limited to its joint or common property, pursuant to Section 53-10-6. Implicit in both the *Flanagan* and *Overton* decisions is the fact that an association wishing to take advantage of the rights conferred upon unincorporated associations by the Legislature, including the right to bring suit in the name of the association, can only do so by complying with the requirements of Section 53-10-1.

**{17}** Arguing that the Act distinguishes between common law associations and statutorily created associations, Blue Canyon points out that some sections of the Act refer to an "association or club *formed under the provisions of* th[e] *act*," while Section 53-10-6, conferring associations with the right to sue in their own names, does not. *Compare* § 53-10-7, *with* § 53-10-6. Because Section 53-10-6 does not refer to associations or clubs formed under the provisions of the Act, Blue Canyon concludes that the right to sue is statutorily conferred on all unincorporated associations, whether formed at common law or by statute. Legislative silence, however, "is at best a tenuous guide to determining legislative intent." *Swink v. Fingado*, 1993-NMSC-013, ¶ 29, 115 N.M. 275, 850 P.2d 978. We see no reason to allow the absence of the language to outweigh its explicit language that filing statutory documents with the county clerk is required to create an unincorporated association. To do so would be to disregard our canons of statutory interpretation.

**{18}** On appeal, the parties do not dispute that neither Movants nor their predecessors in interest ever filed the statutory documents required by Section 53-10-1 to form an unincorporated association. Instead, Blue Canyon's formation was based on an unrecorded well sharing and easement agreement that did that did not satisfy the requirements of Section 53-10-1. Absent such a filing, Blue Canyon cannot avail itself of the rights conferred by the Act, including the right to sue granted by Section 53-10-5.

**{19}** In sum, in order to become an incorporated association entitled to exercise the right to sue, Blue Canyon was required to file the documents delineated in Section 53-10-1. Having failed to do so, we hold that Blue Canyon was not an unincorporated association under Section 53-10-1 and had no legal capacity to sue and to obtain judgment against Jevne. As Blue Canyon's lack of capacity to sue is sufficient for reversal, we need not reach Jevne's argument that Blue Canyon is not the real party in interest. The judgment in favor of Blue Canyon against Jevne was improperly entered, is of no effect, and must be vacated.

## III.    CONCLUSION

**{20}** We reverse the decision of the district court insofar as it grants relief in favor of Blue Canyon against Jevne, and we remand this matter for proceedings consistent with this

opinion.

**{21}** **IT IS SO ORDERED.**

                          _____

                          **JULIE J. VARGAS, Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**J. MILES HANISEE, Judge**