# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: __May 22, 2018__

**No. A-1-CA-35896**

**LINDA FILIPPI, ADDIE DRAPER,
SUSAN OVIATT, and CHARLES OVIATT,**

Appellants-Respondents,

v.

**BOARD OF COUNTY COMMISSIONERS
OF TORRANCE COUNTY, NEW MEXICO,**

Appellee-Petitioner,

and

**JBM LAND & CATTLE, LLC,**

Intervenor-Petitioner.

**APPEAL FROM THE DISTRICT COURT OF TORRANCE COUNTY
Matthew G. Reynolds, District Judge**

Martin E. Threet & Associates
Joseph L. Romero
Albuquerque, NM

for Appellants-Respondents

Wallin Huss & Mendez, LLC
Dennis K. Wallin
Moriarty, NM

for Appellee-Petitioner

Keleher & McLeod, P.A.
Thomas C. Bird
Albuquerque, NM

Hinkle Shanor, LLP
Benjamin F. Feuchter
Albuquerque, NM

for Intervenor-Petitioner

**OPINION**

**KIEHNE, Judge.**

{1}     The Board of County Commissioners of Torrance County (the Board) determined that JBM Land & Cattle, LLC (JBM) did not need a conditional use permit under Torrance County's zoning ordinance to grow medical cannabis on property it owned in a rural section of the county. Several of JBM's neighbors challenged that decision in the district court, which overturned the Board's decision and held that JBM's proposed use of the property was a "commercial use" for which a conditional use permit was required. This court granted and consolidated the Board's and JBM's petitions to review the district court's order. Concluding that JBM's proposed use of its property was a permissive use under the zoning ordinance, we reverse the district court's order and reinstate the Board's decision.

**BACKGROUND**

{2}     JBM purchased land in Torrance County for the purpose of growing medical cannabis to harvest and sell in a dispensary outside the county. The land was in a subdivision zoned as a "conservation district" that "protects and preserves areas within the County which are characterized by their limited access, minimal development, limitations on water resources, natural beauty, fragile environment and native wildlife populations." Torrance County, N.M. Zoning Ordinance (Zoning

Ordinance), § 8(A) (1990, amended 2008).

{3}     The section of the ordinance at issue first sets forth a number of "permissive uses" of land that "are allowed" in a conservation district:

1.     Low intensity agricultural operations such as livestock grazing and related ranching activities; . . .

2.     Horse breeding, boarding and training;

3.     Other low intensity production agriculture;

4.     Cultivation and harvesting of plants and croplands;

5.     Woodcutting and other activities related to harvesting trees;

6.     Singular residential dwelling unit provided it is in compliance with the requirements of the New Mexico Liquid Waste Disposal Regulations; and

7.     Accessory uses and structures necessary to carry out the above-listed permissive uses.

Zoning Ordinance, § 8(B).

{4}     Second, the section at issue lists "[c]onditional [u]ses" that require a landowner to obtain a conditional use permit from the Torrance County Planning and Zoning Commission (Zoning Comission):

1.     Home occupations[1] provided they are confined to the residence or

---

[1]The term "Home Occupation" is defined as "a business, commercial or manufacturing activity that is clearly a secondary use of the premises for a dwelling unit, and which results in a product or service for financial gain." Zoning Ordinance, § 5(B)(16).

accessory structure, are clearly a secondary use of the structure and present no visual impact to neighbors as viewed from adjoining property or public thoroughfare;

2. Small Bed and Breakfast operations limited to two guest bathrooms;

3. Horseback riding stables, provided sufficient land exists to support the number of animals maintained;

4. Dude ranch or other agricultural work experience operation;

5. Outfitters;

6. Essential public utility distribution structures; . . .

7. Communications structures and facilities; and . . .

8. One supplemental residential dwelling unit allowed on a parcel meeting district minimum standards; 2 supplemental residential dwelling units allowed on a parcel of at least eighty acres or 1/8 section.

Zoning Ordinance, § 8(C).

{5}     Third, the ordinance provides another tier of uses—"[c]ommercial uses"—that are only allowed on a case-by-case basis, and states that when deciding whether the commercial use will be permitted in a conservation district, the zoning commission's primary concern is "to minimize the environmental impact on the area." Zoning Ordinance, § 8(A). Although the ordinance does not specifically say that a commercial use requires a conditional use permit, the parties do not seem to dispute this point, and we note that the Board stated in a previous decision that commercial

uses in a conservation district require a conditional use permit.

{6}    JBM approached the Torrance County Zoning Officer, the individual "designated as the principal administrator and enforcement officer of [the Torrance County Zoning Ordinance,]" to ask whether a conditional use permit would be required for it to grow medical cannabis on the land. Zoning Ordinance, § 5. The Zoning Officer determined that because medical cannabis was "either a plant, a crop, or both[,]" growing it would be considered a permissive use under the ordinance and that no conditional use permit was required. JBM began cultivating 300 cannabis plants, using water it hauled in from outside Torrance County, and sheltering the plants in shade cloth "hoop houses" intended to decrease the amount of water needed to grow the plants.

{7}    JBM's neighbors, Linda Filippi, Addie Draper, Susan Oviatt and Charles Oviatt (Neighbors), challenged the Zoning Officer's decision, arguing that JBM should be required to obtain a conditional use permit and raising a number of concerns regarding the cultivation of medical cannabis on the property. These concerns included: that a previous decision of the Board was not followed; the amount of water needed to grow the plants would be exorbitant; that crime in the area could increase with the presence of a controlled substance and subject the public to unnecessary risk; that the road leading to the property could be damaged; that the

4

growing of cannabis is pharmaceutical manufacturing, not cultivation of crops; that the use would be commercial; and that the use would be illegal due to the status of cannabis as a Schedule 1 controlled substance under federal law. Neighbors raised their concerns with the Zoning Commission, which took no action, and then they appealed to the Board. After a public hearing, the Board denied Neighbors' appeal, upholding the Zoning Officer's determination that no conditional use permit was required for JBM to cultivate medical cannabis in a conservation district. The Board noted that the cultivation of medical cannabis was the cultivation of plants or crops, making it a permissive use in a conservation district under the ordinance. It further stated that "[c]ommercial use, as contemplated by Section 8 of the Zoning Ordinance, does not include the production of plants and crops for sale offsite."

{8}     Neighbors next appealed to the Seventh Judicial District Court under Rule 1-074 NMRA. The district court overturned the Board's decision, stating that "[t]he Commission did not follow the law in its interpretation of commercial use being restricted to onsite sales." It also stated that "this court determines as a matter of law under de novo review that the sale of marijuana [cannabis] offsite is a commercial use requiring a permit from the Torrance County Commission." As part of the reasoning for its decision, the district court determined that "[w]hen permissive uses are commercial in nature and require building any structures, the owner of the property

must apply to the Planning and Zoning Board for a permit. Then, on a case-by-case basis, the Board can examine all the aspects affecting the Conservation District in deciding whether to grant the permit." The district court noted that the term "structure," as defined by the ordinance, did not differentiate between temporary or permanent structures, and thus the district court considered the hoop houses on the property to be "structures."

{9}     The Board and JBM each filed petitions for a writ of certiorari to this Court under Rule 12-505 NMRA, which we granted. We reverse the district court's order and reinstate the Board's decision.

**DISCUSSION**

**I.     Standard of Review**

{10}     The standard of review that a district court employs to evaluate the decision of an administrative agency is "(1) whether the agency acted fraudulently, arbitrarily or capriciously; (2) whether based upon the whole record on appeal, the decision of the agency is not supported by substantial evidence; (3) whether the action of the agency was outside the scope of authority of the agency; or (4) whether the action of the agency was otherwise not in accordance with law." Rule 1-074(R) NMRA. "Upon a grant of a petition for writ of certiorari [under Rule 12-505 NMRA], the Court of Appeals utilizes [this] same standard of review to review the decision of the district

6

court." *San Pedro Neighborhood Ass'n v. Santa Fe Cty. Bd. of Cty. Comm'rs*, 2009-NMCA-045, ¶ 11, 146 N.M. 106, 206 P.3d 1011 (citation omitted).

{11}   This administrative appeal requires us to decide whether the Board properly interpreted the Zoning Ordinance, and thus our standard of review in this case is "whether the action of the [Board] was otherwise not in accordance with law." Rule 1-074(R)(4). "[T]he interpretation of a zoning ordinance is a question of law that we review de novo, using the same rules of construction that apply to statutes." *San Pedro Neighborhood Ass'n*, 2009-NMCA-045, ¶ 12; *Alba v. Peoples Energy Res. Corp.*, 2004-NMCA-084, ¶ 14, 136 N.M. 79, 94 P.3d 822. The following three rules apply:

> The first rule is that the plain language of a statute is the primary indicator of legislative intent. Courts are to give the words used in the statute their ordinary meaning unless the legislature indicates a different intent. The court will not read into a statute or ordinance language which is not there, particularly if it makes sense as written. The second rule is to give persuasive weight to long-standing administrative constructions of statutes by the agency charged with administering them. The third rule dictates that where several sections of a statute are involved, they must be read together so that all parts are given effect.

*Id.* ¶ 17 (internal quotation marks and citation omitted).

**II.   The District Court Did Not Exceed the Scope of Its Appellate Review**

{12}   We first address JBM and the Board's contention that the district court ruled on issues that had not been presented for appellate review. The Board argues that the

district court exceeded the proper scope of appellate review because the only issue that Neighbors raised in their statement of appellate issues was a claim that the Board's decision in this case was contrary to a decision that it had reached in another case. JBM and the Board argue that the district court's decision was outside the scope of its appellate review because it was based on matters that Neighbors had not raised in their statement of appellate issues. But neither JBM nor the Board cite any authority stating that the district court may not consider issues not specifically raised in the statement of appellate issues, and therefore we will not consider this argument. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal.").

{13}    The Board also argues that Neighbors did not preserve their argument that JBM's land use was commercial in nature and therefore required a conditional use permit. Similarly, JBM argues that the Board did not address whether the cultivation of medical cannabis was commercial, and thus the district court erred in deciding whether the use was commercial. Our review of the record, however, indicates that Neighbors adequately preserved their argument. Both JBM and the Board understood Neighbors to have raised the issue, because they both discussed it in their responses to Neighbors' statement of appellate issues. And the Board ruled on the issue in its

8

findings of fact and conclusions of law when it stated that commercial uses do not include the production of plants or crops for sale offsite. *See Lopez v. Las Cruces Police Dep't*, 2006-NMCA-074, ¶ 6, 139 N.M. 730, 137 P.3d 670 (holding that an issue was preserved for appellate review where the district court "was alerted to the issue" and "decided" it).

{14} Further, JBM and the Board argue that the district court ruled that JBM needed a building permit for the hoop houses on the property, and that this was improper because no party raised that issue in the district court. However, we interpret the district court's order not as requiring a building permit, but as requiring a conditional use permit when a proposed use is commercial in nature and requires building any structures. Thus, we consider the debate regarding structures to be intertwined with the question of commercial use.

**III. JBM's Proposed Land Use Did Not Require a Conditional Use Permit**

**A. The Board's Decision Was Consistent with the Language of the Zoning Ordinance**

{15} The district court's order stated that "to give effect to the objective and purpose of the Conservation District, give effect to its entire text, and avoid an absurd result" the Zoning Ordinance should be interpreted to mean that "[w]hen permissive uses are commercial in nature and require building any structures, the owner of the property must apply to the Planning and Zoning Board for a permit. Then, on a case-by-case

9

basis, the Board can examine all the aspects affecting the Conservation District in deciding whether to grant the permit." The district court's conclusion is, at the very least, erroneous because the ordinance specifically provides that "[a]ccessory uses and structures necessary to carry out the above-listed permissive uses" are themselves permissive uses in a conservation district. Zoning Ordinance, § 8(B)(7). Given that the Board's interpretation of the Zoning Ordinance is consistent with the express wording contained within it, and the district court's is not, the Board properly determined that JBM's use of shade cloth hoop houses on the property did not require a conditional use permit.

**B.      The District Court Properly Employed the De Novo Standard But Erred in Its Interpretation of "Commercial Use"**

{16}     We next consider whether the district court erred in applying a de novo standard of review and by deciding that medical cannabis cultivation is a "commercial use" under the Zoning Ordinance. The district court held that the Board's definition of "commercial use[,]" which excluded the growing of plants and crops for sale offsite, was improper because it conflicted with this Court's decision in *San Pedro Neighborhood Ass'n*, 2009-NMCA-045, ¶¶ 18-21. JBM and the Board argue that the district court was limited to conducting a whole record review to determine whether the facts supported the Board's decision, and that it was improper for the district court to undertake a de novo review of the ordinance. We conclude, however, that it was

10

proper for the district court to apply a de novo standard of review when interpreting the ordinance. That is because the very essence of the appellate role in the context of statutory interpretation—even when undertaken by district courts exercising their limited appellate authority—is based on de novo review. *See State v. Trujillo*, 2009-NMSC-012, ¶ 9, 146 N.M. 14, 206 P.3d 125 (stating principle that questions of statutory interpretation are matters of law and are reviewed de novo).

{17} We also conclude that the district court misinterpreted this Court's holding in *San Pedro Neighborhood Ass'n*. In that case, a local zoning ordinance prohibited all "commercial uses" except for home-based businesses. 2009-NMCA-045, ¶ 17. A landowner sought to stockpile gravel from a nearby mine on land subject to the ordinance, and argued that it would not be a "commercial use" because he would not be exchanging goods on the land itself. *Id*. ¶ 19. Because the landowner wanted to stockpile the gravel so that it would be ready whenever his customers wanted it, we held that the proposed stockpiling was a "commercial" use because it was "related to the buying and selling of the mined materials." *Id.* (internal quotation marks omitted). In reaching this decision, we merely employed the rules of statutory construction, and applied the plain, dictionary-based meaning of the term "commercial." *Id.* ¶¶ 18-20 (internal quotation marks omitted). However, our decision in *San Pedro Neighborhood Ass'n* does not establish a definition of the term "commercial use" that

11

would apply to every zoning ordinance enacted by every county in the state. *San Pedro Neighborhood Ass'n* did not present the issue of whether applying the plain, dictionary-based meaning of the term "commercial" would render other provisions of the ordinance ineffective, but the present case does.

{18} In this case, we begin by determining whether the plain, generic meaning of "commercial use" applies, because the Zoning Ordinance itself does not define "commercial use[.]" *See* Zoning Ordinance, § 5(B). The "intent" portion of Section 8 of the Zoning Ordinance states that "[c]ommercial uses will not be allowed [in a conservation district] except on a case by case basis in which the primary concern of the Zoning Commission will be to minimize the environmental impact on the area." Zoning Ordinance, § 8(A). Section 8 of the Zoning Ordinance then specifically enumerates some permissive uses that appear to be commercial in nature, including low intensity agriculture; horse breeding, boarding and training; and woodcutting and other activities related to harvesting trees. Zoning Ordinance, § 8(B). The inclusion of these permitted activities suggests that the term "commercial use" should not be given broad scope, as it was in *San Pedro Neighborhood Ass'n*, because doing so would render ineffective the provision on permissive uses. *See Blue Canyon Well Ass'n v. Jevne*, 2018-NMCA-004, ¶ 9, 410 P.3d 251 ("We interpret statutes to avoid rendering the Legislature's language superfluous." (internal quotation marks and

12

citation omitted)). Under Neighbors' interpretation, landowners would almost always have to apply for a conditional use permit to engage in some of the tasks that the ordinance lists as permissive uses. Additionally, many of the "conditional uses" listed by the ordinance would involve onsite sales, such as bed and breakfast operations, riding stables, dude ranches, and agricultural work experience operations. Zoning Ordinance, § 8(C). Thus, the Board's interpretation of the term "commercial use" as not including the cultivation of plants for sale offsite is reasonable, because it harmonizes the "permissive uses" provision with the "conditional uses" and "intent" provisions of the ordinance. *See Blue Canyon Well Ass'n*, 2018-NMCA-004, ¶ 9 ("We consider all parts of the statute together, reading the statute in its entirety and construing each part in connection with every other part to produce a harmonious whole." (alterations, internal quotation marks, and citation omitted)).

{19} Next we consider the second rule, which is to give persuasive weight to long-standing administrative constructions of statutes by the agency charged with administering them. *San Pedro Neighborhood Ass'n*, 2009-NMCA-045 ¶ 12; *Alba*, 2004-NMCA-084, ¶ 22. Though the Board argues that it has always interpreted the ordinance to mean that commercial uses do not include sale of crops or plants offsite, the only evidence the Board presents regarding its interpretation of the term is the argument of counsel. With no evidence in the record, we decline to give weight to

this factor. *See Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)).

{20} Finally, when several sections of a statute are involved, we are to read them together so that all parts are given effect. As set forth above, the Board's interpretation of the ordinance provides the most harmonious reading of the ordinance.

**CONCLUSION**

{21} We hold that the Board's decision that the cultivation of medical cannabis is a permissive use under the ordinance that did not require a conditional use permit was a reasonable interpretation of its own ordinance. Accordingly, we reverse the decision of the district court.

{22} **IT IS SO ORDERED.**

_____
**EMIL J. KIEHNE, Judge**

**WE CONCUR:**

_____

**J. MILES HANISEE, Judge**

_____

**STEPHEN G. FRENCH, Judge**